Bituminous Casualty Corporation and others, Respondents, v. United Military Supply, Inc., Appellant.*

*No. 445. Argued June 3, 1975.—Decided June 30, 1975.*
(Also reported in 230 N. W. 2d 764.)

* Motion for rehearing denied, with costs, on September 30, 1975.

For the appellant there was a brief and oral argument by *John J. Valenti* of Milwaukee.

For the respondents there was a brief by *Donald C. Fellows* and *Wolfe, O'Leary, Kenney & Wolfe,* all of Milwaukee, and oral argument by *Mr. Fellows.*

CONNOR T. HANSEN, J. The defendant corporation operated a general merchandise retail store in a building

at 533 West Wisconsin avenue, Milwaukee. In addition to a main floor, the store had a rear balcony. This balcony had a rest room, unpartitioned office space, and general storage space. Included in the storage area of the balcony was an electrically operated stenciling machine, which was used by the defendant to apply decals to T-shirts and sweat shirts.

The evidence conclusively demonstrates that the fire was confined to the balcony area and was caused by the stenciling machine. The fire caused damages in the amount of $5,560.48. Also, it is undisputed that Michael Sherman, a sixteen-year-old son of the president and employee of the defendant-corporation, Louis Sherman, was the last person to operate the machine on the day of the fire.

The plaintiff has consistently advanced two theories of negligence. It alleged that the defendant was negligent in its placement of the stenciling machine in close proximity to flammable materials. It also alleged that the defendant was negligent in its operation of the stenciling machine.

The defendant advances several arguments for reversal.

However, we consider the dispositive issue on this appeal to be whether Michael Sherman was acting within the scope of his employment and as an agent of the defendant-corporation at the time he used the stenciling machine.

The record reflects the following facts, which we deem relevant to this appeal. On November 28, 1969, at approximately 4:52 in the afternoon, a fire was discovered on the balcony in the area of the stenciling machine and the merchandise storage shelves. Donald B. Wittig, a lieutenant with the Milwaukee fire investigation bureau, was called by the plaintiff to testify concerning his investigation of the cause of the fire.

Lt. Wittig testified that he arrived at the scene shortly after the fire was under control and before the firemen had all left the building. He observed that the electric stenciling machine switch was in the "on" position and that the thermostat was set at 425 degrees. He also stated that the wooden table upon which the stenciling machine was mounted was badly charred and that merchandise, piled all around the table, was also badly charred. He immediately took pictures of the stenciling machine and the area in which it was located. He later personally developed them. At the trial, two of the photographs were admitted into evidence over the objection of the defendant. The pictures indicate that the stenciling machine was surrounded by the wooden storage shelves on three sides, and that the area around the machine was cluttered with merchandise. They also show that the plates of the machine were in the closed position shortly after the fire. Lt. Wittig concluded that the fire was accidentally caused by the overheating of the shirt-stenciling machine. He stated that he could find no other cause of the fire. He further testified that if combustible merchandise were to come in direct contact with a temperature of 425 degrees that it would ignite.

The plaintiff also called John P. Tendick, owner and operator of a private engineering consulting firm, who was later retained by the plaintiff to investigate the cause of the fire. Tendick testified to a reasonable engineering certainty that the cause of the fire was the stenciling machine igniting some material either on or in the plates of the machine. Tendick's conclusion was based upon his study and knowledge of the type of stenciling machine in question, the manner of its construction and normal use, the reports of the fire department, the operating instructions of the stenciling

machine, the photographs of the area of the fire and the in-court testimony of Lt. Wittig.

Carl J. Bartolone, an officer and employee of the defendant-corporation, was called adversely by the plaintiff. He stated that the stencil machine was located three to four foot distance from the nearest merchandise prior to the fire and that it was possible to walk completely around the stenciling table. Bartolone testified that it was the store's rule that only himself and Louis Sherman were to operate the machine. The rule was designed to prevent the wasting of shirts from improper use of the machine. Bartolone stated that to his knowledge, none of the other employees of the store ever used the machine, and no one had used it on the day of the fire. Bartolone explained that the machine was operated between 350 and 400 degrees; that a shirt was placed on the lower cloth-covered plate which did not heat up; a decal placed on the shirt; and the upper hot plate lowered onto the shirt and decal for approximately 10 seconds.

Louis Sherman, the president and employee of defendant-corporation, was also called adversely by plaintiff. His testimony conformed to that of Bartolone, including the fact that no one, to his knowledge, had used the stenciling machine on the day of the fire.

Michael Sherman, the son of Louis Sherman, was subsequently called by the plaintiff as an adverse witness. He testified that on the day of the fire, he had used the stenciling machine to make two T-shirts; one for himself and one for his girl friend. He stated that he was employed at the store as a salesman and stock boy. Upon examination by counsel for the defendant, Michael stated that the store was busy and that he thought it would be a good time to try the machine because he knew the store rule prohibited its use by the general store employees. He remembered turning

the machine on, but could not specifically remember whether he turned it off.

After the plaintiff rested, the defendant recalled Michael Sherman. Michael testified that he did not have permission from anyone to use the machine. He estimated that he used it at approximately 3:30 p.m., just an hour before the discovery of the fire. He admitted that he finally told his father, the day before trial, that he had used the machine. He did not know what happened to the T-shirts he made, but assumed that they were destroyed in the fire as he left them somewhere on the balcony.

The defendant then called James Healy, the salesman who sold the stenciling machine to the defendant and who sold defendant a new one after the fire. He stated that the machine was designed to operate at 350–375 degrees, although the thermostat went to 550 degrees. He stated that if the machine were set at 425 degrees and the plates closed, he was not sure whether the pad on the lower plate would ignite. He stated, however, he would not recommend doing that. He considered it safe to leave the machine turned on for a full day, although the response to the previous question indicates that this answer assumed that the plates were not left closed. On cross-examination, Healy testified that the plates should not be left closed for longer than 30 to 45 seconds as the garment would be scorched.

As its last witness, the defendant recalled Carl J. Bartolone. Bartolone admitted that Michael had told his father and himself the day before the trial of his (Michael's) use of the machine. Bartolone explained his previous testimony that he did not know of anyone who had used the machine on the day of the fire, by saying Michael's confession had slipped his mind.

The testimony of Michael Sherman and Healy, the stencil machine salesman, is unchallenged. Michael Sher-

man's testimony establishes: That he used the stencil machine one hour before the fire was discovered; that he remembered turning the machine on but does not specifically remember turning the machine off; and that he does not remember what he did with the T-shirts when he was done except that they were probably left on the balcony and were destroyed in the fire; that he did not have permission from anyone to use the machine; that he knew the store rule prohibited the use of the machine by general store employees; that at the time he used the machine he thought it would be a good time to try it because the store was busy. Healy's testimony established that while the machine could be left on all day without being a hazard, it could not be left closed for longer than 30 to 45 seconds before the garment in the machine would scorch. Further, while Healy could not state whether the machine was any more hazardous at 425 degrees rather than the 350 to 375 degrees at which it was normally operated, he would not recommend closing the machine at that temperature for longer than 30 to 45 seconds, in view of the possibility that the cloth pad on the lower plate might catch fire.

The two pictures taken by Lt. Wittig, which were received in evidence indicate that the machine plates were in the closed position shortly after the fire. It is undisputed by the defendant that the machine was found after the fire to be in the "on" position; that the thermostat was set at 425 degrees; that the wooden table upon which the machine was mounted as well as the merchandise in the immediate area of the machine were heavily charred; and that the fire was confined to the balcony of the store where the machine was located.

While testifying as expert witnesses, both Lt. Wittig and professional engineer, John P. Tendick, stated that in their opinion the stenciling machine started the fire.

The defendant argues that this expert testimony should be disregarded. From our examination of the record, we find nothing to support this contention.

This court has held that an expert may give an opinion when that opinion is based upon facts which are either undisputed or within his personal knowledge. *Milbauer v. Transport Employes' Mut. Benefit Society* (1973), 56 Wis. 2d 860, 866, 203 N. W. 2d 135; *Rabata v. Dohner* (1969), 45 Wis. 2d 111, 122–124, 133, 172 N. W. 2d 409. A jury's finding which is based on an expert opinion which was in turn based on unestablished assumptions cannot be sustained. *Peil v. Kohnke* (1971), 50 Wis. 2d 168, 175, 184 N. W. 2d 433; *Hicks v. New York Fire Ins. Co.* (1954), 266 Wis. 186, 63 N. W. 2d 59. However, we are satisfied that the expert witnesses' testimony of Wittig and Tendick was based upon their own observations, and upon facts which were either undisputed or within their personal knowledge. The weight to be accorded such testimony is for the jury. *Riehl v. De Quaine* (1964), 24 Wis. 2d 23, 127 N. W. 2d 788.

Based upon the evidence we have set forth, the jury could have reasonably inferred that Michael Sherman either left the T-shirts in contact with the hot upper plate of the stenciling machine which was left on, causing the T-shirts to burn, or that the machine was left closed following its use which caused the cloth pad on the lower plate to catch fire.

Also in consideration of the undisputed testimony, we are of the opinion, as a matter of law, that Michael Sherman was acting outside the scope of his employment and not as an agent of the defendant-corporation at the time he used the machine. Therefore, causal negligence cannot be attributed to the defendant-corporation.

In *Finsland v. Phillips Petroleum Co.* (1973), 57 Wis. 2d 267, 204 N. W. 2d 1, this court set forth the scope

of employment test applicable when the plaintiff seeks to hold the master liable for negligent acts of his servant. It was there stated that the servant is *not* within the scope of his employment if (a) his acts were different in kind than those authorized by the master, (b) his acts were far beyond the authorized time or space limits, *or* (c) his acts were too little actuated by a purpose to serve the master. *Finsland, supra,* page 276.

The only evidence introduced on this issue was favorable to the defendant. With regard to (a) of the test, Michael Sherman, Louis Sherman and Bartolone all testified that there was a standing rule in the store that the machine was not to be used except by Louis Sherman and Bartolone. Michael further testified he knew he was violating the rule when he used the machine, and, in fact, he picked a time when the store was busy so he would not be discovered. With regard to (c) of the test, Michael testified that he used the machine to make a T-shirt for himself and his girl friend, not for sale or use in the store.

The plaintiff contends that this court can uphold the findings of the jury on the basis that the jury could have found that the testimony of Michael, Louis Sherman and Bartolone, was not truthful. It can certainly be said that Louis Sherman and Bartolone were not being totally frank when they first testified that no one used the machine on the day of the fire even though it was later admitted that Michael had told them of his use just prior to the trial. The plaintiff, however, has the burden of proof on this issue, *Finsland, supra,* page 272, and cannot sustain that burden of proof solely on the rejection of contrary testimony since no direct or circumstantial evidence was introduced from which it could be inferred that Michael was acting within the scope of his employment.

In *Mercer v. Wright* (1854), 3 Wis. 568 (*645), plaintiff sued the defendant in trespass alleging that the defendant cut logs on the plaintiff's property. Miller, an employee of the defendant testified that all of the defendant's logs had been cut from the defendant's property. In instructing the jury as to credibility, the trial court stated that if the jury found that Miller had sworn falsely it would create an inference that the defendant had, in fact, cut the logs from the plaintiff's property. In reversing the trial court, this court stated, at page 570 (*648):

". . . The falsehood of a witness called to prove one side of an issue, certainly does not prove it, but neither does it tend necessarily to prove the other side. If Miller was not worthy of credit in his statement that the timber was all cut on the defendant's land, that did not tend to prove that the defendant cut the timber or procured it to be cut on the plaintiff's land. . . ."

A jury verdict will not be permitted to stand where the record is devoid of evidence to sustain it. *Longville v. Leusman* (1970), 48 Wis. 2d 251, 179 N. W. 2d 823; *Lehman v. Sentry Ins. Co.* (1967), 35 Wis. 2d 96, 150 N. W. 2d 333. We find nothing in the evidence to sustain a finding that Michael Sherman's use of the stenciling machine was within the scope of his employment. Therefore, the defendant cannot be liable for the negligence of Michael. It follows that the plaintiff's allegation that the defendant's use of the stenciling machine caused the fire was not proven. Also, we find no evidence in the record which would support a finding that the placement of the machine by the defendant was a cause of the fire. The cause of the fire was the negligent use of the machine by Michael.

We, therefore, conclude that the negligent use of the machine by Michael was the proximate cause of the

damage. We further determine, as a matter of law based upon the undisputed facts, that his use of the stenciling machine was not within the scope of his employment and agency.

The judgment is reversed and the cause remanded with directions to dismiss the complaint.

We have considered the other issues advanced by the respective parties and do not deem them to be pertinent to our disposition of this case.

*By the Court.*—Judgment reversed and cause remanded.

HANLEY, J. *(dissenting)*. I respectfully dissent. I would uphold the findings of the jury on the basis that the jury had a right to disregard the testimony of Michael and Louis Sherman and Bartolone as untruthful. Also, the jury was not required to believe Michael's story that the store was busy and he thought it would be a good time to try the machine because he knew the store rule prohibited its use by general store employees. A more reasonable inference would be that Michael under those circumstances would have requested his father or the regular operator to stencil the two T-shirts in question. I would affirm the trial court's judgment.