STATE of Wisconsin, Plaintiff-Respondent,

v.

Janet BEAUDRY, Agent, Sohn Manufacturing Company d/b/a Village Green Tavern, Defendant-Appellant-Petitioner.

Supreme Court

*No. 83–1783–CR. Argued November 27, 1984.—Decided April 3, 1985.*

(Also reported in 365 N.W.2d 593.)

For the defendant-appellant-petitioner there were briefs by *Gregory J. Paradise* and *Mohs, MacDonald & Widder,* Madison, and oral argument by *Mr. Paradise.*

For the plaintiff-respondent the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

SHIRLEY S. ABRAHAMSON, J.   This is a review of a published decision of the court of appeals, *State v. Beaudry,* 119 Wis. 2d 96, 349 N.W.2d 106 (Ct. App. 1984), affirming a judgment of conviction by the Circuit Court for Sheboygan county, John Bolgert, Circuit Judge. The court of appeals affirmed the judgment, and we affirm the decision of the court of appeals.

The jury found the defendant, Janet Beaudry, the agent designated by the corporation pursuant to sec. 125.04(6)(a), Stats. 1981–82, of the alcoholic beverage

laws,[1] guilty of the misdemeanor of unlawfully remaining open for business after 1:00 a.m. in violation of sec. 125.68(4)(c), which prohibits premises having a "Class B" license from remaining open between the hours of 1:00 a.m. and 8:00 a.m.[2] The tavern manager, not the defendant personally, had kept the tavern open, giving drinks to friends, contrary to his instructions of employment. On the basis of the judgment the defendant was ordered to pay a fine in the amount of $200.00.[3]

[1] Sec. 125.04(6)(a), Stats. 1981–82, provides as follows:

"(6) LICENSES TO CORPORATIONS; APPOINTMENT OF AGENTS. (a) *Agent.* No corporation organized under the laws of this state or of any other state or foreign country may be issued any alcohol beverage license or permit unless:

"1. The corporation first appoints an agent in the manner prescribed by the department. In addition to the qualifications under sub. (5), the agent must, with respect to character, record and reputation, be satisfactory to the department.

"2. The corporation vests in the agent, by properly authorized and executed written delegation, full authority and control of the premises described in the license or permit of the corporation, and of the conduct of all business on the premises relative to alcohol beverages, that the licensee or permittee could have and exercise if it were a natural person."

*See also* sec. 125.04(5)(c), Stats. 1981–82.

[2] Sec. 125.68(4)(c)1., Stats. 1981–82, provides as follows:

"(c) *'Class B' retailers.* 1. In any county having a population of less than 500,000, except in a 1st class city which is located in more than one county, no premises for which a "Class B" license or permit has been issued may remain open between the hours of 1 a.m. and 8 a.m., except as otherwise provided in this subdivision and subd. 4. On January 1, no premises may remain open between 3 a.m. and 8 a.m. During that portion of each year for which the standard of time is advanced under sec. 175.095, no premises may remain open between 2 a.m. and 8 a.m., but the municipality in which the premises is located may establish an earlier closing hour."

[3] Sec. 125.11(1)(a), Stats. 1981–82, provides as follows:

"125.11 Penalties. (1) VIOLATIONS OF CHAPTER. (a) *First offense.* Any person who violates any provision of this chapter for which a specific penalty is not provided, shall be fined not more

The defendant raises two issues on appeal: (1) whether the statutes impose vicarious criminal liability on the designated agent of a corporate licensee for the conduct of a corporate employee who violates sec. 125.-68(4)(c), Stats. 1981–82, and (2) whether there is sufficient evidence to support the verdict in the case. Before we discuss these two issues, we shall set forth the facts.

## I.

The facts are undisputed. The defendant, Janet Beaudry, and her husband, Wallace Beaudry, are the sole shareholders of Sohn Manufacturing Company, a corporation which has a license to sell alcoholic beverages at the Village Green Tavern in the village of Elkhart Lake, Sheboygan county. Janet Beaudry is the designated agent for the corporate licensee pursuant to sec. 125.04(6)(a), Stats. 1981–82.

Janet Beaudry's conviction grew out of events occurring during the early morning hours of February 9, 1983. At approximately 3:45 a.m., a deputy sheriff for the Sheboygan County Sheriff's Department drove past the Village Green Tavern. He stopped to investigate after noticing more lights than usual inside the building and also seeing two individuals seated inside. As he approached the tavern, he heard music, saw an individual standing behind the bar, and saw glasses on the bar. Upon finding the tavern door locked, the deputy sheriff knocked and was admitted by Mark Witkowski, the tavern manager. The tavern manager and two men were the only persons inside the bar. All three were drinking. The deputy sheriff reported the incident to the Sheboygan County district attorney's office for a formal complaint.

than $500 or imprisoned for not more than 90 days or both. Any license or permit issued to the person under this chapter may be revoked by the court."

At about noon on February 9, the tavern manager reported to Wallace Beaudry about the deputy's stop earlier that morning. After further investigation Wallace Beaudry discharged the tavern manager on February 11.

On March 2, 1983, the Sheboygan County Sheriff's Department served the defendant with a summons and a complaint charging her with the crime of keeping the tavern open after hours contrary to sec. 125.68(4)(c), Stats., and sec. 125.11(1), Stats. The tavern manager was not arrested or charged with an offense arising out of this incident.

The case was tried before a jury on May 20, 1983. At trial Janet Beaudry testified that she was not present at the tavern the morning of February 9. Wallace Beaudry testified that Janet Beaudry had delegated to him, as president of Sohn Manufacturing, the responsibilities of business administration associated with the Village Green Tavern; that he had hired Mark Witkowski as manager; that he had informed Witkowski that it was his duty to abide by the liquor laws; and that he never authorized Witkowski to remain open after 1:00 a.m., to throw a private party for his friends, or to give away liquor to friends.

Witkowski testified that he had served drinks after hours to two men. During cross-examination Witkowski confirmed that Wallace Beaudry had never authorized him to stay open after hours; that he had been instructed to close the tavern promptly at the legal closing time; that he knew it was illegal to serve liquor after 1:00 a.m. to anyone, including friends; that his two friends drank at the bar before 1:00 a.m. and had paid for those drinks; that he was having a good time with his friends before closing hours and wanted to continue partying and conversing with them after 1 a.m.; that after closing hours he was simply using the tavern to have a private party for two friends; that he

did not charge his friends for any of the liquor they drank after 1:00 a.m.; and that by staying open he was trying to benefit not Wallace Beaudry but himself.

At the close of evidence, the jury was instructed that the law required the premises to be closed for all purposes between 1:00 a.m. and 8:00 a.m. and that if the jury found that there were patrons or customers on the premises after 1:00 a.m., it must find the premises open contrary to statute.

The jury was also instructed regarding Janet Beaudry's liability for the conduct of the tavern manager: As designated agent of the corporation, the defendant had full authority over the business and would be liable for the tavern manager's violation of the closing hour statute if he was acting within the scope of his employment. The instructions, which are pattern instructions Wis. J.I. Cr. 440 (1966), describe what activities are within the scope of employment and what are outside the scope of employment. Specifically, the jury was instructed as follows regarding the defendant's liability for the conduct of the tavern manager:

"It is also the law of the State of Wisconsin that violations of statutes regulating the sale of liquor do not require a showing of a willful or intentional act.

"It is a law that when a corporation is a licensee, the corporation vests in its agent, in this case Janet Beaudry, full control and authority over the premises and of the conduct of all business on the premises relative to alcohol beverages that the licensee could have exercised if it were a natural person.

"Under Wisconsin law if a person employs another to act for him [sic] in the conduct of his [sic] business, and such servant or agent violates the law, as in this case relating to open after hours, then the employer is guilty of that violation as if he [sic] had been present or had done the act himself [sic], if such act was within the scope of the employment of the servant or agent. It is no defense to prosecution under the statute that the employer was not upon the premises, did not know of the acts of his [sic] servant or agent, had not con-

sented thereto, or even had expressly forbidden such act.

"A servant or agent is within the scope of his employment when he is performing work or rendering services he was hired to perform and render within the time and space limits of his authority and is actuated by a purpose in serving his employer in doing what he is doing. He is within the scope of his employment when he is performing work or rendering services in obedience to the express orders or directions of his master of doing that which is warranted within the terms of his express or implied authority, considering the nature of the services required, the instructions which he has received, and the circumstances under which his work is being done or the services are being rendered.

"A servant or agent is outside the scope of his employment when he deviates or steps aside from the prosecution of his master's business for the purpose of doing an act or rendering a service intended to accomplish an independent purpose of his own, or for some other reason or purpose not related to the business of his employer.

"Such deviation or stepping aside from his employer's business may be momentary and slight, measured in terms of time and space, but if it involves a change of mental attitude in serving his personal interests, or the interests of another instead of his employer's, then his conduct falls outside the scope of his employment.

"If you are satisfied beyond a reasonable doubt from the evidence in this case that Mark Witkowski, the employee of the registered agent, committed the acts charged in the complaint, that Mark Witkowski was the servant or agent of the defendant, and that the acts charged in the complaint were committed by him in the scope of his employment, then you should find the defendant guilty.

"If, however, you are not so satisfied, then you must find the defendant not guilty."

Having been so instructed, the jury returned a verdict of guilty.

## II.

In light of the facts and these instructions, we consider first the question of whether the statutes impose

vicarious criminal liability on a designated agent for the illegal conduct of the tavern manager in this case, *i.e.,* remaining open after 1:00 a.m.

The state's prosecution of the defendant under the criminal laws rests on a theory of vicarious liability, that is respondeat superior. Under this theory of liability, the master (here the designated agent) is liable for the illegal conduct of the servant (here the tavern manager).[4] The defendant asserts, contrary to the position of the state, that the statutes do not impose vicarious criminal liability on her as designated agent of the corporation for the tavern manager's illegal conduct.

While the focus in this case is on the defendant's vicarious criminal liability, it is helpful to an understanding of vicarious liability to compare it with the doctrine of strict liability. Strict liability allows for criminal liability absent the element of *mens rea* found in the definition of most crimes. *See* LaFave & Scott, *Criminal Law,* sec. 31 (1972); *State v. Stanfield,* 105 Wis. 2d 553, 570, 314 N.W.2d 339 (1982) (Abrahamson, J., dissenting); Johnson, *Strict Liability—The Prevalent View,* 4 Encyclopedia of Crime and Justice, 1518 (1983). Thus under strict liability the accused has engaged in the act or omission; the requirement of mental fault, *mens rea,* is eliminated.[5]

---

[4] Vicarious liability should be contrasted with liability for one's own acts as a party to a crime: that is, for directly committing the crime, for aiding and abetting the commission of a crime, or for being a party to a conspiracy to commit the crime. Sec. 939.05, Stats. 1981–82.

It is apparently undisputed that the tavern manager violated the closing hour statute and could have been prosecuted as a party to the crime.

[5] For a discussion of strict liability, see, *e.g.,* Cass, *Ignorance of the Law: A Maxim Reexamined,* 17 Wm. & Mary L. Rev. 671 (1976); Dubin, *Mens Rea Reconsidered: A Plea for a Due Process Concept of Criminal Responsibility,* 18 Stan. L. Rev. 322 (1966); Dutile & Moore, *Mistake and Impossibility: Arranging a Marriage*

This court has construed violations of several statutes regulating the sale of alcoholic beverages which command that an act be done or omitted and which do not include words signifying scienter as imposing strict liability on the actor. As early as 1869, this court explained that the legislature imposed strict liability for the sale of spiritous liquors to a minor because protection of the public interest warrants the imposition of liability unhindered by examination of the subjective intent of each accused.[6]

*Between Two Difficult Partners,* 74 Nw. U. L. Rev. 166 (1979); Feinberg, *Toward a New Approach to Proving Culpability: Mens Rea and the Proposed Federal Criminal Code,* 18 Am. Cr. L. Rev. 123 (1980); Hall, *Ignorance and Mistake in Criminal Law,* 33 Ind. L. J. 1 (1957); Kadish, *Some Observations on the Use of Criminal Sanctions in Enforcing Economic Regulations,* 30 U. Chi. L. Rev. 423 (1963); Mueller, *On Common Law Mens Rea,* 42 Minn. L. Rev. 1043 (1958); O'Connor, *Mistake and Ignorance in Criminal Cases,* 39 Mod. L. Rev. 644 (1976); Packer, *Mens Rea and the Supreme Court,* 1962 Sup. Ct. Rev. 107; Perkins, *Ignorance and Mistake in Criminal Law,* 88 U. Pa. L. Rev. 35 (1939); Platz, *The Criminal Code,* 1956 Wis. L. Rev. 350, 361–63; Remington & Helstad, *The Mental Element in Crime—A Legislative Problem,* 1952 Wis. L. Rev. 644; Sayre, *Public Welfare Offenses,* 33 Colum. L. Rev. 55 (1933); Wasserstrom, *Strict Liability in the Criminal Law,* 12 Stan. L. Rev. 731 (1960); Note, *Scope, Mistake and Impossibility: The Philosophy of Language and Problems of Mens Rea,* 83 Colum. L. Rev. 1029 (1983); Comment, *Liability without Fault: Logic and Potential of a Developing Concept,* 1970 Wis. L. Rev. 1201; Note, *Criminal Law—Mistake of Law—A Valid Defense,* 11 De Paul L. Rev. 329 (1962).

[6] Whether or not remaining open after hours is a strict liability offense is not squarely before the court. The jury was instructed that "violations of statutes regulating the sale of liquor do not require a showing of a willful or intentional act." The parties do not dispute the illegality of the bar manager's conduct in this case. We discuss the strict liability nature of the several alcoholic beverage sale statutes in order to distinguish strict liability from vicarious liability and to delineate the nature of the offense for which the defendant is determined to be vicariously liable.

"The act in question is a police regulation, and we have no doubt that the legislature intended to inflict the penalty, irrespective of the knowledge or motives of the person who has violated its provisions. Indeed, if this were not so, it is plain that the statute might be violated times without number, with no possibility of convicting offenders, and so it would become a dead letter on the statute book, and the evil aimed at by the legislature remain almost wholly untouched." *State v. Hartfiel,* 24 Wis. 60, 62 (1869).

See also *State ex rel. Conlin v. Wausau,* 137 Wis. 311, 313–14, 118 N.W. 810 (1908) ; *State v. Grams,* 241 Wis. 493, 495, 6 N.W.2d 191 (1942).

Vicarious liability, in contrast to strict liability, dispenses with the requirement of the *actus rues* and imputes the criminal act of one person to another. LaFave & Scott, *Criminal Law,* sec. 32 (1972).

Whether the defendant in this case is vicariously liable for the tavern manager's violation of sec. 125.68(4) (c), Stats. 1981–82, depends on whether the specific statutes in question impose vicarious liability. We look first at the language of the statutes themselves.

The principal statutory provisions are secs. 125.68 (4) (c) 1, 125.11 (1) (a), and 125.02 (14). Sec. 125.68 (4) (c), Stats. 1981–82, provides that "no premises for which a 'Class B' license or permit has been issued may remain open between the hours of 1 a.m. and 8 a.m. . . . ." Sec. 125.11 (1) (a), provides that "[a]ny person who violates any provision of this chapter for which a specific penalty is not provided, shall be fined not more than $500 or imprisoned for not more than 90 days or both." Sec. 125.02 (14), states that " '[p]erson means a natural person, sole proprietorship, partnership, corporation or association."

It is apparent that no statute expressly imposes criminal liability upon the designated agent for the illegal conduct of the tavern manager. None of the statutes

states, for example, that "whoever by herself or by an employee of the corporation for which she is the designated agent keeps the premises open shall be punished by . . ." or "whoever keeps the premises open is punishable by . . . and any act by a corporate employee shall be deemed the act of the designated agent as well as the act of the employee."

The state contends that the defendant's liability as designated agent for the illegal conduct of the tavern manager is predicated on sec. 125.04(6)(a), which requires a corporate licensee selling alcoholic beverages to designate an agent to whom the corporation delegates full authority and control of the premises and of the conduct of the business. Sec. 125.04(6)(a) equates the power and authority of the corporation's designated agent with that of a natural person who is a licensee or permittee. Sec. 125.04(6)(a) provides as follows:

"(6) LICENSES TO CORPORATIONS; APPOINTMENT OF AGENTS. (a) *Agent.* No corporation organized under the laws of this state or of any other state or foreign country may be issued any alcohol beverage license or permit unless:

"1. The corporation first appoints an agent in the manner prescribed by the department. In addition to the qualifications under sub. (5), the agent must, with respect to character, record and reputation, be satisfactory to the department.

"2. The corporation vests in the agent, by properly authorized and executed written delegation, full authority and control of the premises described in the license or permit of the corporation, and of the conduct of all business on the premises relative to alcohol beverages, that the licensee or permittee could have and exercise if it were a natural person."

Relying on sec. 125.04(6)(a), the state reasons that because the designated agent of a corporate licensee has the same authority and control over the premises as a licensee who is a natural person, the criminal liability

of a designated agent of a corporate licensee should be the same as that of the licensee who is a natural person. The state further points to case law antedating the present ch. 125 and interpreting the statutes as imposing vicarious criminal liability on a licensee who is a natural person for an employee's violations of laws regulating the sale of alcoholic beverages. Consequently, urges the state, the designated corporate agent is liable for the corporate employee's violations of these alcoholic beverage laws.

The court of appeals adopted the state's position concluding that "the legislature intended an agent to be the human equivalent of the license holder, the corporate entity, and to have the same responsibility for the 'conduct of all business on the premises' as a human (natural person) licensee would." 119 Wis. 2d at 99.

The state has not cited a statute expressly making the natural person licensee vicariously criminally liable for the conduct of an employee who illegally sells alcoholic beverages, and we have found none. Nevertheless, as the state correctly points out, over a long period the court has interpreted several statutes regulating the sale of alcoholic beverages as imposing on the natural person licensee vicarious criminal liability for the illegal conduct of an employee.

In *State ex rel. Conlin v. Wausau*, 137 Wis. 311, 314, 118 N.W. 110 (1908), in response to a request for a writ of mandamus to compel revocation of a saloonkeeper's license for sale of liquor to a minor, the trial court concluded that the saloonkeeper was not liable for the bartender's sale of liquor to a minor in violation of the saloonkeeper's instructions and while the saloonkeeper was absent from the premises. This court reversed, concluding that the writ of mandamus should issue because "the legislation . . . makes the licensee answerable for the acts of his agents, though he was absent

from the place of business and had instructed the agent not to make forbidden sales."

In *Olson v. State,* 143 Wis. 413, 127 N.W. 975 (1910), the saloonkeeper was charged with selling alcoholic beverages on Sunday, although the bartender, not the saloonkeeper, made the sale. The court upheld the conviction and the instructions to the jury that the saloonkeeper is liable for the act of his employee as if he had done the act himself, even if the employee's conduct is contrary to the instructions of the saloonkeeper.

This court reached the same result in *Reismier v. State,* 148 Wis. 593, 598–99, 135 N.W. 153 (1912), in which the bartender violated the statute that prohibited sale of intoxicating liquors on the day of the annual town meeting. The court reiterated the rule that the licensee is liable for the acts of the bartender even though the bartender made the sale without the licensee's consent or even against his instructions.

Finally, in *State v. Grams,* 241 Wis. 493, 6 N.W.2d 191 (1942), as in this case, the bartender had sold liquor during prohibited hours and the licensee was found guilty, even though he was not on the premises when the violation occurred. The court upheld the conviction, relying on the *Conlin, Olson,* and *Reismier* cases discussed above.[7]

---

[7] The defendant attempts to distinguish *Grams* because the statute said "[n]o premises . . . shall be *permitted* to remain open for the sale of liquor. . . ." (emphasis added). In contrast, the present sec. 125.68(4)(c) states, "no premises for which a 'Class B' license or permit has been issued may remain open between the hours of 1 a.m. and 8 a.m. . . ." The notion of permission does not appear in the present statute. Although in holding the licensee liable for the act of the bartender, the *Grams* court stated that "It would seem obvious that the responsibility for closing the premises rests on the owner who 'permits' it to remain open," *State v. Grams,* 241 Wis. 493, 496, 6 N.W.2d 191 (1942), the decision did not turn on this language. The court held, as in

■

The defendant objects to the reliance that the state and the court of appeals place on *Olson, Conlin, Reismier* and *Grams,* asserting that Wisconsin's abolition of common law crimes in 1955 renders these cases superfluous and forces the court to look at the statutes alone for the definition of a crime (brief, p 8). We reject the defendant's assertion. The cases on which the state and the court of appeals rely did not establish or interpret common law crimes, but interpreted statutory crimes.[8]

■

The defendant next asserts that these cases are no longer persuasive authority inasmuch as the statutes were revised since these cases were decided. We are not persuaded by this argument.

It is true that the statutes have been revised since these cases were decided. In revising the statutes the legislature did not expressly provide that either the natural person licensee or the designated corporate agent was vicariously liable for the illegal conduct of an employee who keeps the premises open after closing hours. Following the repeal of Prohibition, the legislature enacted statutes in 1933 regulating the sale and consumption of alcoholic beverages. Subsequent to this revision,

---

the earlier cases, that the obligation of conducting the business in compliance with the liquor laws rests on the licensee.

In a 1963 case involving a city ordinance regulating entertainment at on-sale-liquor establishments, *Conlin* and *Grams* were cited with approval by the court. *City of Milwaukee v. Piscuine,* 18 Wis. 2d 599, 613, 119 N.W.2d 442 (1963).

[8] This court has interpreted other statutes to impose vicarious criminal liability on an employer owner who had no actual knowledge of the violation by his employee. *State v. Drien Milk Products Co-Operative,* 16 Wis. 2d 357, 114 N.W.2d 412 (1962). *See also* sec. 2.07, Model Penal Code Proposed Official Draft, May 23–26, 1962; Comments, sec. 2.04, pp. 11–14, 18–20, Tentative Draft no. 1, May 20–23, 1953; Comments, sec. 2.07, pp. 146–55, Tentative Draft no. 4, May 18–21, 1955.

the court in the *Grams* case continued to follow the earlier cases imposing vicarious liability. In 1981 the laws governing the sale and taxation of alcoholic beverages were recodified but the sections affecting this case were not substantively revised. *See* Information Memorandum 80–5, 1979 A.B. 1261 (March 12, 1980), pp. 3, 7; Prefatory note to 1981 A.B. 300 (Wisconsin Legislative Council Report No. 2 to the 1981 Legislature, April 1, 1981).[9] The 1981 revision did not affect substantially the pre-1941 provisions in regard to the appointment, powers and responsibilities of the agent,[10] the crime of remaining open after hours,[11] and the penalty for the crime.[12]

Thus, since the *Conlin, Olson, Reismier,* and *Grams* decisions the legislature has had the opportunity to adopt or to preclude vicarious liability for violations of laws regarding sale of alcoholic beverages. The legislature took neither course of action. Instead the legislature left the statutes in question substantially the same. We read this legislative history to mean that in enacting the current laws the legislature intended to retain the *Conlin-Grams* decisional law interpreting the statutes as imposing vicarious liability on the natural person

[9] For a discussion of the importance of the agent being the person responsible for the conduct of business and the person whom the state could hold responsible for complying with the laws, *see* Goldman & Henkel, Staff Attorneys, Legislative Council, Memo No. 13 to Members of the Special Committee on the Recodification of Alcoholic Beverage Laws, "Foreign Corporations' Eligibility for Licenses and Permits and Qualifications of Corporate Agents, Officers and Directors," 4 (June 5, 1979).

[10] Compare sec. 176.05(13), Stats. 1941, and sec. 125.04(6)(a), Stats. 1981–82.

[11] Compare sec. 176.06(3), Stats. 1941, and sec. 125.68(4)(c), Stats. 1981–82.

[12] Compare sec. 176.41, Stats. 1941, and sec. 125.11(1)(a), Stats. 1981–82.

licensee for the conduct of the employee who illegally sells alcoholic beverages.

In addition to the legislative history, another consideration persuades us that the legislature intended the statutes in question to impose vicarious criminal liability on the natural person licensee for an employee's violation of the closing hour law. The purpose of the statute is promoted if the doctrine of vicarious liability is applied.

Several factors influence this court to conclude that the purpose of the statute is promoted by the imposition of vicarious liability. First, the state has imposed numerous restrictions on the sale of alcoholic beverages to protect the public health and safety. The state has been particularly concerned with when and to whom alcoholic beverages may be sold. Statutes regulating the sale of alcoholic beverages have been recognized as creating strict liability "public welfare offenses." *See* Sayre, *Public Welfare Offenses*, 33 Colum. L. Rev. 55, 63 (1933).[13] Second, violation of the closing hours law is a misdemeanor; the penalty is a monetary fine and a relatively short period of imprisonment. Third, in many cases it may be difficult for the state to prove that the natural person licensee or corporate agent was negligent in hiring or supervising the employee, or knew about or authorized the employee's violation of the statute. Lastly, the number of prosecutions may be large so that the

[13] For a discussion of public welfare offenses, *see State v. Stepniewski*, 105 Wis. 2d 261, 270–74, 314 N.W.2d 98 (1982); *State v. Collova*, 79 Wis. 2d 473, 482–85, 255 N.W.2d 581 (1977); *State v. Dried Milk Products Cooperative*, 16 Wis. 2d 357, 361–362, 114 N.W.2d 412 (1962).

Many of the same factors that lead a court to interpret a statute as imposing strict liability lead the court to interpret the statute as imposing vicarious liability. LeFave & Scott, *Criminal Law*, sec. 32 (1972).

legislature would want to relieve the prosecution of the task of proving the employer knew of or authorized the violation or was negligent. In *Grams* the court summarized its reasoning in holding the natural person licensee vicariously criminally liable for the employee's failure to comply with the laws as necessary "[a]s a practical matter . . . if regulation is to be effective." *State v. Grams, supra,* 241 Wis. at 496. *See also State ex rel. Conlin v. Wausau, supra,* 137 Wis. at 314.[14]

After reviewing the language of the current statutes, the legislative history of the current statutes, the cases interpreting the statutes, and the purpose of the statutes regulating the sale of alcoholic beverages, we conclude that the *Conlin-Grams* line of cases interpreting alcoholic beverages statutes as imposing vicarious criminal liability on the natural person licensee for an employee's violation of an alcoholic beverage sale law have continuing validity under the statutes in question in this case.

Inasmuch as the natural person licensee is subject to vicarious criminal liability for the conduct of her or his

---

[14] As the Comment to Wis. J.I.–Cr. No. 440 (1966) observes: "Responsibility for crimes in the nature of nuisances or 'public welfare' offenses may be based on the doctrine of *respondeat superior.* The extension of the tort rules of liability to the criminal law took place fairly early in the case of certain nuisances. Vicarious responsibility for so-called public welfare offenses is a more recent development. The fact that these offenses generally impose light penalties, the fact that the harm to society may be great, and the fact that it is often difficult to prove authorization or knowledge on the part of the employer all are factors which have contributed to the judicial extension of traditional rules of criminal responsibility. The only reported Wisconsin case[s] in the area of *respondeat superior* deal with liability for the unlawful sale of liquor. *Olson v. State* (1910), 143 Wis 413, 127 NW 975; *Scott v. State* (1920), 171 Wis 487, 177 NW 615; *State v. Grams* (1942), 241 Wis 493, 6 NW2d 191."

employee who illegally sells alcoholic beverages, it logically follows that a corporation licensee should be similarly liable for the illegal conduct of its employee. But in this case the defendant is not the corporation licensee; the defendant is the designated agent of the corporation. The question for the present case, therefore, is whether a designated corporate agent is subject to vicarious criminal liability for the illegal conduct, *i.e.*, remaining open after closing hours, of the tavern manager who is an employee of the corporation. In other words, does the rationale of the *Conlin-Grams* line of cases compel us to conclude that the statutes in issue here impose vicarious criminal liability on a designated agent of the corporate licensee for the illegal conduct of an employee of the corporation?[15]

We agree with the court of appeals that the legislature intended to impose such liability on the designated agent. The court of appeals correctly noted that unless vicarious criminal liability was imposed on the designated agent, a natural person licensee could avoid criminal liability by simply incorporating the business. The legislative intent in vesting the designated agent with full authority and responsibility for conduct of the business was to treat the designated agent as a natural person licensee for all purposes, including criminal liability. The legislature could not have intended to allow a natural person licensee to avoid criminal liability by incorporating the business. *Beaudry*, 119 Wis. 2d at 100.

While legislative purpose and public policy support our holding that a designated agent is vicariously liable

---

[15] Although *United States v. Dotterweich*, 320 U.S. 277, 284 (1943), and *United States v. Park*, 421 U.S. 658, 673–76 (1975), which the parties cite, are subject to numerous interpretations, these cases can be read as interpreting a federal statute as imposing vicarious criminal liability on a corporate officer if the officer stands in a responsible relation to the prohibited conduct.

for the conduct of the corporate employee who violates the closing hours law, the defendant's final argument is that due process requires blameworthy conduct on the part of the defendant as a prerequisite to criminal liability. Although the imposition of criminal liability for faultless conduct does not comport with the generally accepted premise of Anglo-American criminal justice that criminal liability is based on personal fault, this court and the United States Supreme Court have upheld statutes imposing criminal liability for some types of offenses without proof that the conduct was knowing or wilful or negligent.[16]

The defendant's chief challenge to the constitutionality of the statute in issue in this case appears to be that the defendant could have received a jail sentence of up to 90 days for the violation. As the state points out, the defendant was fined $200, and the due process issue the defendant raises, whatever its validity, is not presented by the facts in this case. A decision by this court on the constitutionality of a jail term where the statute imposes vicarious liability would not affect the judgment of conviction in this case or the sentence imposed on this defendant. *See State v. Young,* 294 N.W.2d 728 (Minn. 1980); *Commonwealth v. Koczwara,* 397 Pa. 575, 155 A.2d 825, 831 (1959), *cert. denied,* 363 U.S. 848 (1960). We therefore do not consider this issue.

## III.

We turn now to the question of whether the evidence supports the verdict that the tavern manager was acting

---

[16] See, *e.g., State v. Stepniewski,* 105 Wis. 2d 261, 273–75, 314 N.W.2d 98 (1982); *United States v. Balint,* 258 U.S. 250 (1922); *United States v. Behrman,* 258 U.S. 280 (1922).

within the scope of his employment. As we stated previously, the jury was instructed that the defendant is liable only for the acts of the tavern manager that were within the scope of his employment. Thus the defendant is not liable for all the acts of the tavern manager, only for those acts within the scope of employment. Neither the state nor the defense challenges this statement of the law limiting the designated agent's vicarious criminal liability.[17]

The Restatement (Second) of Agency, sec. 217D, states that "[a] principal may be subject to penalties enforced under the rules of the criminal law, for acts done by a servant or other agent." Although it is not within the scope of the Restatement to state in detail the rules as to the criminal liability of a master, the comments

---

[17] The scope of employment doctrine does not represent the only means of limiting the circumstances under which the acts of an employee may be imputed to the corporation or to a corporate officer for purposes of criminal liability.

For a discussion of the vicarious criminal liability of corporations and corporate officers, see LaFave & Scott, *Criminal Law*, sec. 32 (1972); Abrams, *Criminal Liability of Corporate Officers for Strict Liability Offenses—A Comment on Dotterweich and Park*, 28 U.C.L.A. L. Rev. 463 (1981); Brickey, *Criminal Liability of Corporate Officers for Strict Liability Offenses—Another View*, 35 Vand. L. Rev. 1337 (1982); Miller, *Corporate Criminal Liability: A Principle Extended to Its Limits*, 38 Fed. B.J. 49 (1979); Miller & Levine, *Recent Developments in Corporate Criminal Liability*, 24 Santa Clara L. Rev. 41 (1984); Mueller, *Mens Rea and the Corporation*, 19 U. Pitt. L. Rev. 21 (1957); Packer, *Mens Rea and the Supreme Court*, 1962 Sup. Ct. Rev. 107, 117; Robinson, *Imputed Criminal Liability*, 93 Yale L. J. 609 (1984); Sayre, *Criminal Responsibility for the Acts of Another*, 43 Harv. L. Rev. 689 (1930); *Developments in the Law, Corporate Crime: Regulating Corporate Behavior Through Criminal Sanctions*, 92 Harv. L. Rev. 1227, 1246–75 (1979); Note, *Individual Liability of Agents for Corporate Crimes Under the Proposed Federal Criminal Code*, 31 Vand. L. Rev. 965 (1978); Comment, *Limits on Individual Accountability for Corporate Crimes*, 67 Marq. L. Rev. 604 (1984).

to sec. 217D do, however, address scope of employment and the criminal liability of the master for strict liability crimes as follows:

"Many regulatory statutes do not require intent to violate them, or even knowledge of the act or condition which causes the conduct to be illegal. . . . Illustrations of such statutes are those which penalize the sale of impure food or alcoholic beverages. A master is normally penalized for the violation of such acts by his servants acting in the scope of employment, although they acted disobediently and he had no reason to anticipate such conduct. There are also statutes which impose liability upon the owner of a business or of premises for acts done by an employee even where the employee acts on his own acount. This is normally true where there is an illegal sale of liquor by an employee of a tavern operator at a forbidden time, even though the servant is acting for his own purposes. On the other hand, the owner of a store not engaged in the sale of liquor is not normally penalized in such a case, nor is the owner of a tavern penalized for a similar act by one not his servant. Statutes the purpose of which is to impose liability upon the owner of the business or the premises are so diverse in language and objectives that generalizations are not useful." Restatement (Second) of Agency sec. 217D comment c, pp. 474–75 (1958).

In contrast to sec. 217D, secs. 228–37 of the Restatement (Second) of Agency discuss the concept of scope of employment for purposes of the master's tort liability.

The "scope of employment" standard as applied to alcoholic beverage regulation in this state can be traced to *Doscher v. State*, 194 Wis. 67, 214 N.W. 359 (1927). In *Doscher*, the defendant was licensed to conduct a business selling non-intoxicating beverages. Contrary to instructions, an employee brought intoxicating liquor on the premises. The defendant, a natural person licensee, was convicted of unlawfully having intoxicating

liquor on his premises. The state urged the court to uphold the conviction on the ground that the conscious possession of contraband liquor by the defendant's employee who was in charge of the licensed premises must be held to be the conscious possession of the defendant. The court reversed the conviction.

The *Doscher* court held that the principle of vicarious liability established in the *Conlin, Olson* and *Reismier* cases was not applicable to the *Doscher* case "because the possession of [intoxicating liquor by Doscher's] agent was not within the scope of his employment. . . ." *Id.* at 70. The *Doscher* court apparently viewed the employee who acts outside the scope of employment as an interloper[18] for whose illegal conduct the employer would not be liable. The court thus distinguished the facts in that case from the *Conlin* line of cases as follows:

"In the [other] cases . . . the agent was employed to have possession of and dispose of liquor for the defendant. This very employment, therefore, contemplated and covered the field of possession, disposal, and sale of the articles, so that the respective violations by the agents of the specific regulations as to the manner of carrying on such employment could properly be charged against the defendant employers who knowingly furnished the agents with the means and opportunity of violating the law. Here the defendant as employer did not confer upon the one left in charge of the premises any power, authority, or means for any such violation. The act of the employee in going outside of the premises and obtaining the forbidden alcohol was a stepping outside of any express or implied authority given him by defendant. For such an act, entirely independent of and beyond the purpose of the employment, the defendant

---

[18] In *Reismier v. State*, 148 Wis. 593, 598, 135 N.W. 152 (1912), the court stated that defendant would be liable for the illegal sale by an agent authorized to sell but not for a sale by a mere interloper.

ought not to stand charged merely because of an existing relationship of master and servant for an entirely different and lawful purpose." 194 Wis. at 70–71.

The application of the standard of scope of employment limits liability to illegal conduct which occurred while the offending employee was engaged in some job-related activity and thus limits the accused's vicarious liability to conduct with which the acccused has a factual connection and with which the accused has some responsible relation to the public danger envisaged by the legislature.

The defendant argues that in this case, as in *Doscher,* the tavern manager went outside his scope of authority. The state concedes that this is a reasonable view of the evidence and that this is a close case. The state argues, however, that the jury's verdict must be upheld under the standard of review applied to jury verdicts.

The test on review, which this court has frequently stated, is not whether this court is convinced of the defendant's guilt beyond a reasonable doubt "but whether this court can conclude that a trier of facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true. On review we view the evidence in the light most favorable to sustaining the conviction." *State v. Hamilton,* 120 Wis. 2d 532, 540–41, 356 N.W.2d 169 (1984).

Although this court does not generally reexamine the sufficiency of the evidence if the court of appeals has reviewed the record and concluded that the jury's verdict was founded on sufficient evidence, *Winkie, Inc. v. Heritage Bank of Whitefish Bay,* 99 Wis. 2d 616, 621, 299 N.W.2d 829 (1981), we examine the issue here. The petition for review requested review of the sufficiency issue, and we granted the petition on all issues. The

parties have briefed this issue. We have reviewed the record in this case.

We agree with the conclusion reached by the court of appeals. The credibility of the bar manager's testimony was a matter for the jury. *Braatz v. Continental Casualty Co.*, 272 Wis. 479, 487, 76 N.W.2d 303 (1956). The bar manager's testimony which supports the defendant's position that the manager was acting outside the scope of employment was based on a statement the bar manager gave defendant's counsel the night before trial. The jury may not have believed this testimony which was favorable to the defendant. Considering that the conduct occurred on the employer's premises and began immediately after "closing time"; that the employee had access to the tavern after hours only by virtue of his role as an employee of the corporate licensee, which role vested him with the means to keep the tavern open; and that the defendant may anticipate that employees may be tempted to engage in such conduct; the jury could conclude that the tavern manager's conduct was suffficiently similar to the conduct authorized as to be within the scope of employment. The jury could view the tavern manager's conduct as more similar to that of an employee to whom the operation of the business had been entrusted and for whose conduct the defendant should be held criminally liable than to that of an interloper for whose conduct the defendant should not be held liable.

For the reasons set forth, we affirm the decision of the court of appeals affirming the conviction.

*By the Court.*—Decision of the court of appeals is affirmed.

LOUIS J. CECI, J. (dissenting). I respectfully dissent from the majority's conclusion that there is suffi-

cient evidence to support the verdict in this case finding that Mark Witkowski, the tavern manager, was acting within the scope of his employment. In reviewing the evidence in the light most favorable to sustaining Janet Beaudry's conviction, I believe that the record is devoid of evidence to sustain the verdict. I would reverse the decision of the court of appeals which affirmed the defendant's conviction because I am convinced that, as a matter of law, no trier of fact, acting reasonably, could conclude beyond a reasonable doubt that Mark Witkowski was acting within the scope of his employment when he kept the Village Green tavern open after 1:00 a.m. in violation of sec. 125.68 (4) (c), Stats.

We have previously held that a servant is *not* within the scope of his employment if (a) his acts were different in kind than those authorized by the master, (b) his acts were far beyond the authorized time or space limits, or (c) his acts were too little actuated by a purpose to serve the master. *Strack v. Strack*, 12 Wis. 2d 537, 541, 107 N.W.2d 632 (1961), citing *Restatement (Second) of Agency* § 228(2) (1958), cited with approval in *Scott v. Min-Aqua Bats Water Ski Club*, 79 Wis. 2d 316, 321, 255 N.W.2d 536 (1977). It is important to note that this test is set out in the disjunctive and not the conjunctive, and, thus, not all three elements must be satisfied before there can be a finding that the servant was outside the scope of his authority.

In conformance with this test, the jury was instructed that,

"[a] servant or agent is within the scope of his employment when he is performing work or rendering services he was hired to perform and render within the time and space limits of his authority and is actuated by a purpose in serving his employer in doing what he is doing. . . .

"A servant or agent is outside the scope of his employment when he deviates or steps aside from the

prosecution of his master's business for the purpose of doing an act or rendering a service intended to accomplish an independent purpose of his own, or for some other reason or purpose not related to the business of his employer."

Unfortunately, the majority fails to evaluate the uncontroverted facts in this case with respect to these three criteria outlined in *Strack.* In doing so, I conclude that Mark Witkowski was not within the scope of employment when he kept the tavern open after 1:00 a.m.

The first element of the test asks whether Witkowski's acts were different in kind than those authorized by the defendant. Witkowski stated that one of his duties as a manager included closing the tavern at one o'clock. He testified that Wallace Beaudry never authorized him to stay open after the legal closing time. In fact, he was specifically instructed to close promptly at the legal closing time. Additionally, Witkowski testified, "I knew that Wally would not want me to stay open after hours but I decided to do it anyway."

Wally Beaudry also testified at the trial. He confirmed Witkowski's testimony by stating that one of Witkowski's duties was to follow all the liquor laws of this state and that he never authorized Witkowski to remain open after 1:00 a.m., throw a private party for his friends, or give away liquor.

A thorough review of the trial transcript reveals that this testimony of Witkowski and Wally Beaudry was in no way impeached by the state. The majority admits that this evidence is undisputed. Page 44. This testimony was wrongly ignored by the majority. I conclude that Witkowski was not within his scope of employment, because his act of keeping the tavern open until 3:45 a.m. was not authorized by Mr. or Mrs. Beaudry.

The second element of the test adopted in *Strack,* 12 Wis. 2d 537, asks whether Witkowski's acts were

far beyond the authorized time or space limits. I conclude that Witkowski's acts were beyond the authorized time limit because, as stated above, there was testimony that Witkowski was not hired to stay open after hours, and, at the time the police arrived at the tavern, it was 3:45 a.m. Witkowski testified that he usually was done with his normal cleanup between 1:15 a.m. and 1:30 a.m. Over two hours passed between the time he should have locked up and left the tavern and the time the police arrived. Although there is no testimony to this fact, it can reasonably be inferred that Witkowski did not expect to get paid for these two hours when he was sitting at the bar and drinking with his friends. It is clear that Witkowski was no longer working at 3:45 a.m. and that his acts were far beyond the time limit authorized by Janet or Wally Beaudry.

The third and final factor to be considered is whether Witkowski's acts were too little actuated by a purpose to serve the defendant. Not only the direct testimony of Witkowski, but also the circumstantial evidence, provide support for the finding that Witkowski's acts were in no way intended to further the defendant's business, but were motivated solely for his own enjoyment and convenience. Witkowski testified that after the other patrons left the Village Green tavern, he was not performing any work duties, but was entertaining his "real good friends." Witkowski stated,

"I was not trying to benefit Wallace Beaudry by staying open after hours. I was simply using Wally's tavern to have a *private party* for my two friends. By staying open for my two friends I was not trying to benefit Wallace Beaudry in any way, rather I was trying to benefit myself by continuing the conversation I had started with my friends." (Emphasis added.)

The undisputed circumstantial evidence also bears out the fact that Witkowski's acts were not serving the

purpose of the defendant. Deputy Sheriff Kenneth Van Ess testified that he arrived at the tavern at 3:45 a.m. Loud music was coming from within the tavern. The door was locked to outside patrons. Witkowski and Pethan were sitting at the bar, and Dickman, a non-employee, was standing behind the bar.[1] There were glasses and a bottle of liquor sitting on the bar. Van Ess testified that it was quite apparent that all three men had been drinking. Witkowski was not performing any cleanup or maintenance duties. Finally, Witkowski, Dickman, and Pethan all testified that Witkowski had been charging Dickman and Pethan for drinks before 1:00 a.m. Witkowski testified that he did not charge his friends for drinks after 1:00 a.m. This statement is also confirmed by the testimony of Dickman.[2]

Based on this testimony, I conclude that Witkowski was not acting within the scope of his authority, because his acts were in no way intended to serve the defendant. The fact that Witkowski gave his employer's liquor to his friends without charge after 1:00 a.m., when he knew it was illegal and contrary to his authority as a manager of the tavern to stay open after closing hours, strongly supports the conclusion that Witkowski did not intend to further the defendant's business, but was acting solely for his own enjoyment and convenience. Unfortunately, the majority fails to consider these factors in making its determination.

The majority suggests that there is a possibility that the jury may not have believed the testimony of Witkowski, Dickman, and Pethan merely because their testimony was based on statements given to the defendant's attorney. I disagree with this assumption,

---

[1] Dickman later testified that he went behind the bar to get another bottle of liquor.

[2] Ken Pethan testified that he does not remember if he had anything to drink after 1:00 a.m.

because the testimony of these witnesses was in no way impeached and in no way conflicts with the testimony of the other witnesses. However, even if these statements are not considered with respect to this issue, the overwhelming evidence, which is summarized above, supports the conclusion that Witkowski was not acting within the scope of his employment when he kept the tavern open until 3:45 a.m.

In conclusion, I would like to point out that the majority's finding that there is sufficient evidence to support the jury's finding that Witkowski was within the scope of his authority is contrary to this court's holding in *Bituminous Cas. Corp. v. United Military Supply*, 69 Wis. 2d 426, 230 N.W.2d 764 (1975). The *Bituminous* case involved a fire which broke out in the balcony of the defendant corporation's building in the area of a stenciling machine. There was testimony that the cause of the fire was the stenciling machine igniting some material either on or in the plates of the machine. The machine was operated by placing a shirt on the lower cloth-covered plate, which did not heat up, a decal on top of the shirt, and lowering the upper hot plate onto the shirt and decal for approximately ten seconds. It was the store's policy that only two employees were to operate the stencil machine— Louis Sherman, president of the corporation, and Carl Bartolone, officer of the corporation.

At trial, Michael Sherman, son of Louis Sherman, testified that on the day of the fire, he used the stencil machine to make two T-shirts. He was employed by the defendant as a salesman and stock boy. He testified that he did not have permission from anyone to use the machine, and he was aware of the store rule prohibiting use of the machine by the store's general employees. Michael estimated that he used the machine approximately one hour before the discovery of the fire. The

jury found that the defendant corporation was negligent and that its negligence was a proximate cause of the fire. The issue on appeal was whether Michael Sherman was acting within the scope of his employment and as an agent of the defendant corporation at the time he used the stenciling machine.

On review, this court reversed the judgment, holding,

"Based upon the evidence we have set forth, the jury could have reasonably inferred that Michael Sherman either left the T-shirts in contact with the hot upper plate of the stenciling machine which was left on, causing the T-shirts to burn, or that the machine was left closed following its use which caused the cloth pad on the lower plate to catch fire.

"Also in consideration of the undisputed testimony, we are of the opinion, as a matter of law, that Michael Sherman was acting outside the scope of his employment and not as an agent of the defendant-corporation at the time he used the machine. Therefore, causal negligence cannot be attributed to the defendant-corporation." 69 Wis. 2d at 433.

In *Bituminous,* this court looked to the test adopted in *Strack,* 12 Wis. 2d 537, to aid in our determination of whether Michael Sherman was acting within his scope of employment when he used the stencil machine. With respect to the first element of the test, i.e., whether Michael's acts were different in kind than those authorized by the defendant-corporation, we held,

"Michael Sherman, Louis Sherman and Bartolone all testified that there was a standing rule in the store that the machine was not to be used except by Louis Sherman and Bartolone. Michael further testified he knew he was violating the rule when he used the machine, and, in fact, he picked a time when the store was busy so he would not be discovered." 69 Wis. 2d at 434.

Similarly, in the case at hand there was uncontradicted testimony that Witkowski was not authorized to keep

the tavern open after the legal closing time, and he was aware of the fact that it was illegal to do so.

In *Bituminous,* this court did not consider the second criteria of the test, i.e., whether Michael's acts were far beyond the authorized time or space limits. Although Michael used the stencil machine during his normal work hours and at the defendant corporation's store, we still held that he was outside his scope of authority. However, in the case at hand, Witkowski's acts were far beyond the authorized time limit, given the fact that he remained at the tavern with his friends over two hours after he should have locked the tavern and left for the evening.

Finally, with respect to the third element of the test, i.e., whether Michael's acts were too little actuated by a purpose to serve the corporation, we concluded,

"Michael testified that he used the machine to make a T-shirt for himself and his girl friend, not for sale or use in the store." *Id.*

Similarly, in the case at hand, Witkowski did not intend to further the defendant's business, but was acting solely for his own enjoyment and convenience.

The majority in the case at hand argues that there is not sufficient evidence, because it is possible that the jury may not have believed the testimony of Witkowski, Dickman, and Pethan. Similarly, the argument was made in *Bituminous* that this court should uphold the jury's findings on the basis that the testimony of Michael and Louis Sherman and Bartolone was not truthful. We rejected that argument, holding,

"The plaintiff, however, has the burden of proof on this issue [of whether Michael was acting within the scope of his employment], *Finsland,* [57 Wis. 2d at 267], page 272, and cannot sustain that burden of proof solely on the rejection of contrary testimony since no direct or circumstantial evidence was introduced from which

it could be inferred that Michael was acting within the scope of his employment." *Id.* at 434.

Pursuant to our holding in *Bituminous,* I conclude that there is nothing in the evidence to sustain a finding that Witkowski was acting within the scope of his employment.

The majority's conclusion in this case is contrary to the precedent set forth in *Bituminous,* 69 Wis. 2d 426, and it unfairly imposes vicarious liability on the defendant simply because Mark Witkowski was an employee and on the premises at the time the two police officers arrived. However, it has long been established by this court that,

". . . . it must be appreciated that the element of stepping aside, commonly found in the rule [of agency], does not require any particular period of cessation from the business or going away from the place thereof. A mental attitude of stepping aside, even momentarily, —turning the attention to the accomplishment of a purpose solely outside of that of promoting the object of the employment, effectually breaks the connection between the servant and the master,—leaves no 'nexus' between them, as said in the authorities, vital to the latter's liability." *Firemen's Fund Ins. Co. v. Schreiber,* 150 Wis. 42, 59, 135 N.W. 507 (1912).

Such was the case for Mark Witkowski when he decided to have a "private party" after legal closing hours at the tavern.

In conclusion, I would reverse the judgment of conviction because I conclude that as a matter of law, Mark Witkowski was outside his scope of employment when he kept the Village Green tavern open until 3:45 a.m., and, further, no jury, acting reasonably, could conclude otherwise. It is apparent that the jury did not apply the uncontroverted facts in this case to the law given in the jury instructions.

For the above-stated reasons, I dissent.