STATE of Wisconsin, Plaintiff-Respondent,
v.

Keith STOEHR, Defendant-Appellant.

Supreme Court

*No. 85–1090-CR. Argued October 1, 1986.—Decided November 25, 1986.*

(Also reported in 396 N.W.2d 177.)

For the defendant-appellant there were briefs by *Franklyn M. Gimbel, Jefferey A. Kaufman, Marna M. Tess-Mattner* and *Gimbel, Gimbel & Reilly*, Milwaukee, and oral argument by *Franklyn M. Gimbel.*

For the plaintiff-respondent the cause was argued by *Sharon Ruhly*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

SHIRLEY S. ABRAHAMSON, J. This is an appeal from a judgment of conviction of the circuit court for Kenosha County, James W. Karch, Judge. This court took jurisdiction of the appeal upon certification by the court of appeals. Section 809.61, Stats. 1983–84. We affirm the judgment of the circuit court.

The defendant was convicted of two felony counts under sec. 946.13(1)(b), Stats. 1983–84, of performing, in his capacity as a public officer, a function requiring the exercise of discretion on his part with regard to a contract in which he had a direct or indirect private

pecuniary interest.[1] He was sentenced to pay fines of $2500 on each count. The statutory penalty for the crime is a fine not to exceed $10,000 or imprisonment not to exceed two years or both. Section 939.50(3)(e), Stats. 1983-84.

In its order granting the certification request, this court expressly limited its consideration of the case to the issue identified in the court of appeals' certification request, to wit: "Whether sec. 946.13(1)(b), Stats., which prohibits a public officer from having a private interest in a public contract, is a strict liability statute, and if so, whether it is constitutional."

Although we limited the issue on certification to the issue of strict liability, we have decided to consider the other two issues raised in this appeal: sufficiency of the complaint and availability of a privilege defense under sec. 939.45(3). This court has jurisdiction to decide these issues. When this court grants direct review upon certification, it acquires jurisdiction of the appeal, which includes all issues, not merely the issues certified or the issue for which the court accepts the certification. Section 808.05(2), Stats. 1983-84. Further, the court has jurisdiction over issues not certified because the court may review an issue directly on its own motion. Section 808.05 (3), 1983-84.

We address the sufficiency of the complaint because this issue can be answered by this court readily and quickly on the record before it. We address the statutory privilege defense issue because, as both parties acknowledged at oral argument, this issue is intertwined with whether sec. 946.13(1)(b) sets forth a strict liability

---

[1] The defendant was convicted for acts occurring between 1978 and 1979. The relevant portion of sec. 946.13 has not changed since 1977.

offense and is a constitutional statute. In this case the court may, in all fairness to the parties, decide all three issues without further briefs or argument, because the parties presented all three issues fully to this court.

The circuit court concluded the complaint was sufficient. It further concluded that sec. 946.13(1)(b) does not require the state to prove scienter and is constitutional. The circuit court allowed the defendant to introduce evidence relating to a possible defense of privilege under sec. 939.45(3) but refused to instruct the jury regarding the statutory defense. The record does not reveal whether the circuit court's ruling rests on the conclusion that the statutory defense does not apply to a charge under sec. 946.13(1)(b) or that the evidence in this case did not reasonably require the instruction.

We conclude that the complaint sufficiently states facts to establish probable cause; that sec. 946.13(1)(b) establishes a strict liability crime in that the state need not prove scienter; and that, while we are not fully persuaded that the statutory privilege defense applies to this crime, we are persuaded the defendant failed to present enough evidence at trial to warrant a jury instruction on this defense. Finally, this case does not present the constitutional due process issue the defendant attempts to raise.

I.

The inferences drawn from the facts may be in dispute but the facts developed at trial can be summarized briefly as follows. The defendant was District Director of the Gateway Technical Institute. As District Director, the defendant was to foster, promote and maintain the vocational, technical and adult education system in

71

Kenosha, Racine and Walworth counties and was responsible to a Board of Directors which set policy for the Director to implement. The defendant's job description states he was the chief administrative officer of the District Board, planned the agenda for the Board meetings, participated in Board discussions, made recommendations to the Board, and provided leadership to the Board. The District Board, composed of citizens, met monthly, and the defendant was required to attend these meetings.

Starting in the early 1970's, Gateway embarked on a program to provide vocational and technical assistance to foreign nations. Generally, the foreign entity paid the funds to an intermediary who contracted with and paid Gateway. Gateway created a separate foreign project account for each contract so these monies would be separate from local, state or federal tax dollars or tuition receipts used to run the district's main programs. After Gateway completed a foreign project, the foreign project account balance was transferred to the development fund account, which was used to promote future foreign projects.

At issue in this case are the expenditures from the foreign project accounts and the development fund account to pay honorariums to the defendant who volunteered to participate in the foreign projects programs. The defendant asserted that he volunteered to work on the foreign projects and received honorariums only for work performed during vacation time or his own available time.

The rates for honorariums were set by the "Cabinet," a group of Gateway's principal administrators who met weekly to discuss the day-to-day operation of the district and to make administrative decisions affecting

the institution. The defendant was a member and the chairperson of the Cabinet. One witness testified the Cabinet reached decisions on a consensus basis, unless the members reached a deadlock, in which case the defendant made the final decision.

The defendant attempted to show he received the honorariums openly and publicly and the District Board (Board) approved them. At its monthly meetings, the Board reviewed and approved expenditures listed on lengthy monthly bill sheets, which included the honorariums and other payments from the foreign projects and development fund accounts as well as other expenditures. The defendant testified he would tell Board members what an expenditure was for when a Board member asked; the testimony related to questions by a Board member prior to the Board meeting. One Board member witness recalled he asked questions about expenditures prior to the meetings; he knew some expenditures to the director were for expenses but did not remember whether he was told any were honorariums. The defendant testified the business office sometimes prepared the honorarium checks in anticipation of the Board's approval, and this approval was almost universally granted. There was no evidence that the defendant presented to the Board for discussion or approval the practice of paying him honorariums or that the Board discussed or approved his honorariums as separate items.

Finally, the defense presented a number of character witnesses who testified the defendant was honest and trustworthy.

## II.

The defendant argues this complaint is insufficient because it does not list any specific discretionary acts, thus omitting an essential element of a sec. 946.13(1)(b) offense. We disagree with the defendant.

■ The complaint must set forth facts that would lead a reasonable person to conclude a crime had probably been committed and the defendant named in the complaint was probably the culpable party. In Wisconsin, a sufficient complaint must be minimally adequate based on a common sense, not hypertechnical, evaluation of the essential facts establishing probable cause. Section 968.01, Stats. 1983-84; *State v. Gaudesi*, 112 Wis. 2d 213, 219-20, 332 N.W. 2d 302 (1983).

■ The complaint states that the defendant, as director of Gateway Technical Institute, on various dates "authorized and received . . . monies, over and above his normal salary, for work performed in connection with" four public contracts. The words "authorized and received" denote the performance of a function requiring the exercise of discretion; the reader of the complaint could understand that the defendant chose to authorize money paid to himself in excess of his salary, and that his authorization and receipt of these monies were discretionary acts. We conclude the complaint established the requisite probable cause.

## III.

We consider next whether a sec. 946.13(1)(b) crime is a strict liability offense. Sec. 946.13(1)(b) provides:

946.13 *Private interest in public contract prohibited.*
(1) Any public officer or public employe who does
any of the following is guilty of a Class E felony: ...

(b) In his capacity as such officer or employe, partic-
ipates in the making of a contract in which he has a
private pecuniary interest, direct or indirect, or per-
forms in regard to that contract some function
requiring the exercise of discretion on his part.

A strict liability crime does not require proof of
scienter, criminal intent.[2] On appeal, the parties agree
the defendant voluntarily, deliberately, and intention-
ally committed the acts that form the basis of his con-
viction. The defendant asserts that sec. 946.13(1)(b)
requires the state to prove scienter, and specifically cor-
rupt motive. The defendant contends the state must
show he acted with an evil purpose as distinguished
from acting without knowing the act was wrong and a
punishable crime.

This court has frequently been asked to decide
whether scienter is an element of the crime when the
statute does not explicitly refer to scienter.[3] This issue
turns, as do other issues of statutory construction, on
legislative intent. Where several interpretations of a
statute exist, the court must ascertain the legislative
intent from the language of the statute in relation to its

---

[2] For general discussions on strict liability see LaFave and Scott,
*Criminal Law*, § 31 (1972); 1 LaFave and Scott, *Substantive Crimi-
nal Law* §§ 2.12(d) and 3.8 (1986); Kelman, *Strict Liability: An
Unorthodox View*, 4 *Encyclopedia of Crime and Justice* 1512 (1983);
Johnson, *Strict Liability: The Prevalent View*, id. 1518.

[3] See, *e.g., State v. Danforth*, 129 Wis. 2d 187, 385 N.W.2d 125
(1986); *State v. Stanfield*, 105 Wis. 2d 553, 314 N.W.2d 339 (1982);
*State v. Collova*, 79 Wis. 2d 473, 255 N.W.2d 581 (1977).

75

context, scope, history and purpose. A cardinal rule in interpreting statutes is to favor a construction that fulfills the purpose of the statute over a construction that defeats it.

■

In determining legislative intent regarding scienter, this court has considered the following factors: the language of the statute, the legislative history of the statute, the seriousness of the penalty, the purpose of the statute and the practical requirements of effective law enforcement. *State v. Collova*, 79 Wis. 2d 473, 478-80, 482, 485, 255 N.W.2d 581 (1977); *State v. Stanfield*, 105 Wis. 2d 533, 560-61, 314 N.W.2d 339 (1982). On the basis of these factors, we conclude sec. 946.13(1)(b) is a strict liability statute.

■

We look first to the statute's language. Section 939.23(1), Stats. 1983-84, provides guidance to determine whether the legislature intended scienter to be an element of an offense set forth in the criminal code. *State v. Danforth*, 129 Wis. 2d 187, 198, 385 N.W.2d 125 (1986). Section 939.23(1) provides that "[w]hen criminal intent is an element of a crime in chs. 939 to 948, such intent is indicated by the term 'intentionally', the phrase 'with intent to', the phrase 'with intent that', or some form of the verbs 'know' or 'believe'."[4] Section 946.13(1)(b) does not contain the word "intentionally"

---

[4] Sec. 939.23(3), Stats. 1983-84, defines the word "intentionally" in the criminal code to mean

> that the actor either has a purpose to do the thing or cause the result specified or believes that his act, if successful, will cause that result. In addition, . . . the actor must have knowledge of those facts which are necessary to make his conduct criminal and which are set forth after the word "intentionally."

or any other explicit language to denote scienter.[5] Section 946.13(1)(b), read with sec. 939.23(1), indicates the legislature did not intend scienter to be an element of the offense charged because sec. 946.13(1)(b) does not contain any words denoting intent.

Even when a criminal statute contains no explicit words denoting scienter, the court has on occasion interpreted the statute to require the state to prove criminal intent. The court frequently looks beyond the statute's words to determine legislative intent regarding scienter. For example, we look at the statute's legislative history because we recognize that, while the legislature may create crimes in which criminal intent is not an element, *State v. Stepniewski*, 105 Wis. 2d 261, 275, 314 N.W.2d 98 (1982), criminal intent is the rule in our criminal jurisprudence, *State v. Alfonsi*, 33 Wis. 2d, 469, 476, 147 N.W.2d 550 (1967).

Upon examining the legislative history of sec. 946.13, we conclude this history strongly supports the state's position that the legislature intended sec. 946.13(1)(b) to be a strict liability statute.

Section 946.13, adopted as part of the new 1955 criminal code, can be traced to sec. 348.28, Stats. 1953, which proscribed malfeasance of public officers. The 1955 amendments divided sec. 348.28 into two sections: sec. 946.12, entitled "Misconduct in Public Office," which describes several offenses using such words as intentionally, knows, and with intent to; and sec. 946.13, entitled "Private interest in public contracts prohib-

---

[5] In *State v. Alfonsi*, 33 Wis. 2d 469, 476, 147 N.W.2d 550 (1967), upon which the defendant relies, the bribery statute used the words "with an understanding." The court found this phrase indicated legislative intent to include scienter as an element of the crime. No such words of scienter appear in the statute at issue in this case.

77

ited," which describes several offenses which did not include words denoting scienter.[6]

The Comments in the Judiciary Committee Report on the Criminal Code (submitted 1953), p. 176, explain that an actor who is guilty under sec. 946.12 must have the requisite criminal intent, *i.e.*, "the public officer must know that what he does under color of his office . . . is either prohibited or not authorized by law."[7] The Report also explains that sec. 946.12 was a substantial restatement of the old law "except that the new section requires proof of criminal intent while some of the old sections . . . may have imposed strict liability." *Id.*

In contrast, the Judiciary Committee Report explaining the provision that was to become sec. 946.13(1) comments that "the section imposes strict liability, i.e., it is not necessary to prove criminal intent or

---

[6] From 1955 until 1978 secs. 946.12 and 946.13 were both misdemeanors. They were punishable by a fine of not more than $500 or imprisonment of not more than one year or both. Chapter 173, Laws of 1977, secs. 122 and 123 made both sections Class E felonies.

[7] 1953 Wisconsin Legislative Council, Vol. 5. This court has frequently relied on this Judiciary Committee Report on the Criminal Code explaining Bill No. 100, A. See, *e.g.*, *Champlin v. State*, 84 Wis. 2d 621, 624–25, 267 N.W.2d 295 (1978); *State v. Alfonsi*, 33 Wis. 2d 469, 475, 147 N.W.2d 550 (1967). This report was written while the Legislative Council was considering a revision of the Wisconsin criminal code. Although the 1953 proposed revision was not adopted, the 1955 legislature adopted a substantial part of the revision. The Judiciary Committee Report reflects the thinking of the study group which drafted the 1953 revision and the 1955 legislature which adopted a substantial part of the group's proposed revision into law. For a history of this process see Platz, *The Criminal Code*, 1956 Wis. L. Rev. 350 (1956).

corrupt motive." Report, page 179. These comments show a specific legislative intent to make sec. 946.13(1)(b) a strict liability crime. The legislative history thus strongly supports the conclusion that the legislature did not intend scienter to be an element of sec. 946.13(1)(b).

The legislative history distinguishes this case from *State v. Alfonsi*, 33 Wis. 2d 469, 147 N.W.2d 550 (1967), in which the legislative history, including the text of successive statutes and a Legislative Council Committee Report, convinced this court that criminal motive was an element of bribery. See *State v. Stanfield*, 105 Wis. 2d 553, 561, n.9, 314 N.W.2d 339 (1982).

■ We examine next the purpose of sec. 946.13(1)(b) for guidance regarding legislative intent. When the legislature's goal is primarily to regulate, to accomplish a social good, or to obtain a high standard of care, proof of a criminal state of mind is often eliminated to achieve the desired result. *State v. Collova*, 79 Wis. 2d 473, 485, 255 N.W.2d 581 (1977). We believe the goal of sec. 946.13(1)(b) leads to interpreting the statute as a strict liability offense.

According to the Judiciary Committee Report, the goal of sec. 946.13 is to enforce a prescribed standard of conduct. Section 946.13 is directed not at corruption but at conduct presenting an opportunity for corruption. Report, p. 179. Because a public officer's judgment may be impaired when the officer transacts government business in which he or she has a personal economic interest, the statute attempts to prevent public officers from succumbing to temptation by making it illegal for them to enter into relationships which are fraught with the danger that they will advance a private interest rather

than a public good. *Cf. United States v. Mississippi Valley Co.,* 364 U.S. 520, 549–50 (1961) (federal statute prohibits private interest in public contract).

Section 946.13(1)(b) is based on the common law rules that an agent may not serve two masters and that an agent may not engage in self-dealing. The Judiciary Committee Report (p. 179) explains:

> The object of [sec. 946.13] is to prevent a public officer or employe from having private pecuniary interests which may influence him to exercise discretionary powers in his official capacity in a manner inconsistent with the interests of the public. It is derived from that rule of agency which prohibits an agent from serving two masters with opposing interests in the same transaction and the common-law rule which prohibits public officers from simultaneously holding incompatible offices.

The legislature apparently concluded that a high standard of care must be imposed on public officials in the public interest. Statutes with similar purposes frequently do not require scienter. See *Morissette v. United States,* 342 U.S. 246, 254–260 (1952).

The defendant relies on *State v. Alfonsi,* 33 Wis. 2d 469, 147 N.W.2d 550 (1967), to argue that a sec. 946.13(1)(b) offense is like bribery under sec. 946.10, and that because the legislature intended to require corrupt motive in bribery it intended to require corrupt motive here. The *Alfonsi* court noted that bribery "by its inherent nature has traditionally required a corrupt motivation." *Alfonsi,* 33 Wis. 2d at 476. The defendant has provided no authority that the offense described in sec. 946.13(1)(b) by its inherent nature or by tradition requires a corrupt motive.

Sections 946.10 relating to bribery and 946.13(1)(b) relating to self-dealing are two of eight different statutory provisions penalizing misconduct by a public officer. There is nothing in these eight statutory provisions indicating the legislature intended the court to read the requirements of one statute into another. We are not persuaded that the *Alfonsi* holding applies to the crime charged in this case.

■

The defendant also argues that because the penalty for violating sec. 986.13(1)(b) subjects the offender to a possible maximum prison term of two years, the legislature must have intended scienter to be an element of the crime. The defendant relies on *Collova v. State*, 79 Wis. 2d 473, 255 N.W.2d 581 (1977), in which the court considered the severity of the penalty—a mandatory jail sentence—as an important factor indicating the legislature intended to include scienter as an element of the offense.

*Collova* illustrates the court considers the severity of the penalty as one indicia of legislative intent to require scienter, but not the sole indicia. Thus in *Collova* the court considered a number of factors when it concluded scienter was an element of the crime. *Collova*, 79 Wis. 2d at 484, 487–88. Also, in *Stanfield* the court concluded that although the offense carries the potential of lengthy incarceration, the legislature did not intend scienter to be read in as an element of the offense. *Stanfield, supra* 105 Wis. 2d at 561, n. 10. The availability of imprisonment as a penalty for the violation of a statute may point toward legislative intent that scienter is an element of the crime, but the penalty does not resolve the issue. This court has recognized that not all

crimes with prison sentences include scienter as an element.

Finally, we look to the practical requirement of effective law enforcement. Because there are many public officers and numerous opportunities for creating private interests in public contracts, it is reasonable to conclude the legislature intended that, as a practical matter, the state not prove scienter.

All the factors we have discussed bear on the interpretation of sec. 946.13(1)(b). No single factor is controlling. Upon considering all the factors relating to legislative intent, we conclude the factors point toward strict liability. Accordingly, we hold the legislature intended sec. 946.13(1)(b) to be a strict liability offense, without the element of corrupt motive.

## IV.

Even though we have found sec. 946.13(1)(b) to be a strict liability offense, the defendant urges this court to hold that he may raise a statutory defense of privilege, namely, his conduct was in good faith and was an apparently authorized and reasonable fulfillment of the duties of a public office.

The defendant argues the circuit court erred in not instructing the jury on the statutory privilege defense set forth in sec. 939.45(3), Stats. 1983–84, which provides as follows:

> Sec. 939.45. *Privilege.* The fact that the actor's conduct is privileged, although otherwise criminal, is a defense to prosecution for any crime based on that

conduct. The defense of privilege can be claimed under any of the following circumstances: . . . .

    (3) When the actor's conduct is in good faith and is an apparently authorized and reasonable fulfillment of any duties of a public office.

Although the statute expressly states that it applies to "any crime based" on the actor's conduct, the state asserts that this statutory privilege defense does not apply to a strict liability offense. Further, the parties dispute whether the statutory privilege defense applies to a sec. 946.13(1)(b) offense.

    We reserve the question whether an accused may claim this statutory privilege defense when charged with committing the offense charged in this case. But even if we recognize that this statutory defense applies, we conclude that the defendant failed to establish his conduct was "an apparently authorized . . . fulfillment of any duties of a public office" as required by the statute. Therefore, the circuit court correctly decided not to instruct the jury on this statutory privilege defense.

    We recognize that an actor charged with violating a strict liability offense may, under certain circumstances, successfully claim a defense. In *State v. Brown*, 107 Wis. 2d 44, 52-53, 318 N.W.2d 370 (1982), the court addressed whether the defendant could claim self-defense, coercion, necessity, or entrapment in a prosecution for speeding, a strict liability civil traffic offense. The court concluded that "recognizing a defense of legal justification does not necessarily conflict with the concept that violation of a traffic law is a strict liability offense. The basic concept of strict liability is that culpability is not an element of the offense and that the state is relieved of the burdensome task of proving the offender's culpable state of mind." *Id.* at 53. The *Brown*

court recognized that when the defendant claims legal justification, he is not seeking to disprove a statutorily required state of mind. "Instead he is claiming that even though he knowingly violated the law, his violation was privileged under the circumstances." *Id.* at 53.

The State correctly argues the *Brown* ruling is not precedent for allowing the defendant to assert a statutory privilege defense in this case. We agree with the state that the court expressly limited *Brown* to the facts of that case, specifically declining to decide whether other circumstances give rise to a defense of justification to the strict liability traffic offense at issue in that case. *Id.* at 56.

The *Brown* case is significant here because it recognizes the difference between strict and absolute liability offenses. The *Brown* court noted that under absolute liability statutes "every violation of the literal terms of the statutes renders the offender guilty without exception." In contrast, under strict liability statutes, the state need not prove the defendant's state of mind. *Id.* at 52–53.[8]

---

[8] Sec. 939.45 (3) apparently creates an affirmative defense. An affirmative defense does not implicate proof of elements of the crime. 1953 Wisconsin Legislative Council Judiciary Committee Report, p. 54; *State v. Saturnus*, 127 Wis. 2d 460, 473, n. 9, 381 N.W.2d 290 (1986); *State v. Staples*, 99 Wis. 2d 364, 376–77, n. 4, 299 N.W. 2d 270 (Ct. App. 1980).

Once the defendant successfully raises an affirmative defense, the state may be required to disprove the defense beyond a reasonable doubt. In *Moes v. State*, 91 Wis. 2d 756, 765, 284 N.W.2d 66 (1979), the court stated, "[I]f the defendant introduces evidence to establish a statutory defense to criminal liability, the defendant must be found not guilty unless the jury is convinced beyond a reasonable doubt of the guilt of the defendant notwithstanding the proffered

Accepting the *Brown* distinction between strict and absolute liability, we nevertheless confront difficulties in applying the statutory privilege defense asserted by the defendant.

The defendant argues that his conduct was an "apparently authorized and reasonable fulfillment of any duties of a public office"; he argues that "his actions in negotiating and working on the foreign projects were entirely in keeping with Gateway's mission and purpose." Brief, p. 26. That may be true. But the defendant's discretionary acts of paying himself honorariums is prohibited by sec. 946.13(1)(b). The statute establishing the privilege defense is ambiguous regarding whether the conduct of public officers may be an "apparently authorized and reasonable fulfillment" of duties when the conduct is expressly prohibited by statute. *Cf.* Model Penal Code § 3.03 comment 5, n. 19, pp. 29–30 (1962 Draft with Comments) (1985) (regarding analogous N.Y. statute).

Further, the statutory privilege defense does not seem appropriate to a sec. 946.13(1)(b) violation. The statutory privilege defense was intended to protect a public officer who, but for the defense provided in sec. 939.45, would be guilty of a crime if he or she were acting as a private citizen,[9] and whose unlawful conduct

---

defense." See also 2 Robinson, *Criminal Law Defenses* § 149(a), pp. 216–17 (1984).

[9] The 1953 Wisconsin Legislative Council Judiciary Committee Report, p. 39, states the purpose of the statutory privilege as follows: "Subsection (3) recognizes that a public official in executing an order of a superior or in performing the duties of his office may lawfully do things which he could not lawfully do in his capacity as a private citizen, but does not attempt to state specifically what can or cannot be done."

has "sufficient value to society so that it ought not subject the actor to criminal liability."[10] The statutory privilege defense is designed to provide a justification for conduct which "must be in accord with the actor's function as a public servant, and must be necessary and proportional to the protection and furtherance of the interests at stake." 2 Robinson, *Criminal Law Defenses*, sec. 149(a), p. 216 (1984).

If the statutory privilege defense applies only when the public official would be found guilty of a crime as a private citizen and the public official's conduct is of public benefit, it is questionable whether this defense was intended to apply here. Section 946.13(1)(b) specifically regulates public officials conducting public business, not private citizens conducting private business.

But we need not decide whether the statutory privilege defense applies to a sec. 946.13(1)(b) offense. Even if we were willing to hold that the defense applies and to adopt the defendant's interpretation of the statutory defense, we would conclude the defendant in this case was not entitled to an instruction on the defense. The defendant failed to produce sufficient evidence to show that his conduct was an "apparently authorized . . . fulfillment of any duties of public office," an element of the statutory defense.

---

[10] 1953 Wisconsin Legislative Council Judiciary Committee Report, p. 39. The Comments to sec. 339.45 (renumbered 939.45) refer the reader to the Restatement of Torts §§ 202, 211, 265(c), 271, 275 (1934), which discuss the privileges of public officers by virtue of the office or statutory authority to avoid tort liability for otherwise tortious conduct. Report, p. 40.

For general discussions on the public duty justification, see *Model Penal Code* § 3.03 (1985) (1962 Draft with Comments); 1 La Fave and Scott, *Substantive Criminal Law*, § 5.5(b) (1986).

The circuit court permitted the defendant in this case to offer evidence on the asserted statutory privilege defense. The circuit court refused, however, to instruct the jury on the defense.

█

A defendant is not automatically entitled to a jury instruction on an offered defense. The defendant has the initial burden of producing evidence to establish a statutory defense to criminal liability. *State v. Moes*, 91 Wis. 2d 756, 765, 284 N.W.2d 66 (1979); *State v. Staples*, 99 Wis. 2d 364, 376–77, n. 4, 299 N.W.2d 270 (Ct. App. 1980). The rule generally applied to instructions is "that a trial court is not required to give requested instructions unless the evidence reasonably requires it. However, a defendant in a criminal case, when he properly requests, is entitled to have the jury consider any defense which is supported by the evidence. Ultimate resolution of the issue of the appropriateness of giving [a] particular instruction turns on a case-by-case review of the evidence, with each case necessarily standing on its own factual ground . . . . [W]here the defendant appeals from the denial of a request instruction, 'the evidence is to be viewed in the most favorable light it will reasonably admit from the standpoint of the accused.' " *Johnson v. State*, 85 Wis. 2d 22, 28, 270 N.W.2d 153 (1978). See also *Fletcher v. State*, 68 Wis. 2d 381, 385, 228 N.W.2d 708 (1975) (entrapment); *State v. Saternus*, 127 Wis. 2d 460, 480, 381 N.W.2d 290 (1986) (entrapment); *Belohlavek v. State*, 34 Wis. 2d 176, 179, 148 N.W.2d 665 (1967) (negative defense).

The crux of the defense urged by the defendant is that he was "apparently authorized" to assign himself to work on the foreign projects and to receive honorari-

ums.[11] The defendant argues his conduct was privileged under the defense statute because he "operated under apparent authority from the Board, in light of the Board's complete awareness of the particular expenditures it authorized as well as of the general procedures involved." Brief, p. 26.

The defendant's argument implies that when an independent board authorizes the public officer's discretionary conduct, the officer's private interest does not interfere with the public's interest in the public contract. In other words, when the public officer's discretionary act is authorized by the board, the public officer's conduct does not introduce the influence of possible adverse private interests which sec. 946.13(1)(b) is designed to counteract. Furthermore, to the extent the defendant can show that the decision that he work on these projects on "his time" and be paid

---

[11] The only case cited by the parties which discusses the phrase "apparently authorized" under the statutory defense defined in sec. 939.45(3) is State v. Schoenheide, 104 Wis. 2d 114, 116, 310 N.W.2d 650 (Ct. App. 1981). In Schoenheide the court of appeals held a firefighter could not claim the sec. 939.45(3) privilege when he had been convicted of drunk driving while driving a car in the performance of his duties. The court of appeals did not decide whether he was fulfilling his duties as a public officer when he was driving but rested its holding on the issue of authorization. The court concluded that driving while under the influence of an intoxicant is not an "apparently authorized" duty of a public office. No statute authorizes the conduct; no case suggests that firefighters may drive while intoxicated. Common sense suggests the opposite. Schoenheide, 104 Wis. 2d at 116.

The Schoenheide court used the term "apparently authorized" to mean authorized by law. The defendant does not cite any law authorizing his conduct or authorizing the Board to authorize his conduct. Therefore Schoenheide does not support his defense.

extra was the Board's rather than his, he may be able to argue that the decisions concerning the work and the honorariums were an exercise of the Board's discretion rather than his and therefore the payment of honorariums was not a violation of the statute which prohibits the public officer's discretionary conduct.[12]

The defendant's interpretation of the statutory privilege defense, like sec. 946.13(1)(b), appears to be derived from the common law rules relating to self-deal-

---

[12] The defendant argues he acted in good faith, another element of the statutory defense. The defendant does not set a standard for the term "good faith" other than stating the defendant "believed that his administration of the foreign projects was proper so long as the revenues from the projects were not commingled with Gateway's income from tuition and tax dollars." Brief, p. 26.

The defendant does not rely on *State v. Davis*, 63 Wis. 2d 75, 82, 216 N.W.2d 31 (1974), in his good faith argument. In *Davis* this court held that a county board member could claim a "good faith" defense against a sec. 946.13(1) charge if (1) county corporation counsel and a district attorney had advised the member in good faith as to the legal implications of his actions; (2) the member relied in good faith on the correctness of that opinion; and (3) the procedure following the legal opinion was public. *Id.* at 80–81. To prevent abuse of this defense, the *Davis* court carefully limited its application "to the good—faith reliance upon the legal opinion of a governmental officer whose statutorily created duties include the rendering of legal opinions as to actions of specific individuals or groups [and where] action of any individual or group relying on such opinion would have to be taken in good faith, open and unconcealed." *Id.* at 82.

The *Davis* case is distinguishable from the case at bar. First, *Davis* does not address the defense set forth in sec. 939.45 (3). Also, in *Davis* a statute authorized the corporation counsel and the district attorney to give legal advice. In this case the defendant cites no statute authorizing the Board to give legal or other advice to the defendant regarding private interests in a public contract. Nor has this court found any such statute. See secs. 38.12 and 38.14, Stats. 1979–80, for Board's duties and powers.

ing and conflicts of interest. Under the common law an agent could avoid liability for self-dealing if the agent communicated to the principal all material facts in connection with the transaction which the agent knew or should have known would affect the principal's decision, and the principal consented to the transaction.[13]

The defendant asserts that because he made full disclosure to an independent board which authorized his conduct, the circuit court should have instructed the jury on the statutory defense. We must examine the record to determine whether the defendant presented enough evidence to warrant a jury instruction based on the defendant's interpretation of the statutory defense.

The record, viewed favorably to the defendant, shows that the defendant, a public officer, used his discretion to work on foreign projects for extra compensation instead of hiring other persons or performing the services without extra pay. Further, he helped set the honorarium rates with other cabinet members, assigned honorariums to himself, and then presented these honorariums to the District Board on "monthly bill lists" that included many expenditures. There was no evidence that the defendant discussed the specific question of foreign project honorariums with the Board as a whole either as a general matter or as an issue relating to him.

Each month the Board approved these lengthy lists, which stated the accounts from which the monies were paid, the person or entity paid, and the sum paid. The monthly bill lists themselves do not, on their face, give detailed information. The lists do not specify why the

---

[13] *Cf.* Restatement (Second) of Agency § 390 (1958) ("Acting as Adverse Party with Principal's Consent") and Restatement (Second) of Trusts § 170 (1959) ("Duty of Loyalty").

defendant received the monies, either by the work performed or by noting "expense" or "honorarium."

The defendant testified he usually offered information regarding an expenditure only when a board member questioned it. There is little if anything in the record to show that anyone advised the Board as an entirety about honorariums as a result of the Board members' questions about the expenditures. A Board member testified that, prior to the meetings, he questioned expenditures, including a $700 expenditure to the defendant, and was told the expenditure was reimbursement for expenses; he was not sure he was ever told an expenditure was an honorarium.

The Board apparently did not have an honorarium policy for foreign projects. The Board did have a written honorarium policy for staff in-school extracurricular activities whereby staff members who acted as advisors to clubs or other student groups were paid honorariums not to exceed $100 (adopted in 1968) or $300 (adopted in 1979). The record established that the honorarium payments the defendant received exceeded those amounts. There is nothing in the record that reasonably supports an inference that Board members knew they were approving honorarium payments to the defendant for foreign contract work.

We conclude that the record, viewed favorably to the defendant, is not sufficient to show "the Board's complete awareness of the particular expenditures it authorized," Brief, p. 26, or the Board's intentional and knowing authorization for the defendant to hire himself to perform services under the contracts on his "own" time and to pay himself honorariums above and beyond his established salary.

Accordingly, even if we were convinced that the statutory privilege defense may be used to excuse the offense charged in this case, we would conclude the defendant in this case was not entitled to a jury instruction on the statutory privilege defense.

## V.

The last issue is the defendant's constitutional challenge. The defendant argues that if this court concludes that sec. 946.13(1)(b), Stats. 1983-84, which authorizes a prison term as a penalty, is a strict liability statute, it violates due process.

The defendant does not address what aspect of due process is being violated. The defendant does not, for example, assert that sec. 946.13(1)(b) shifted the burden of proof to the defendant; prohibited wholly passive conduct; is vague or overbroad; fails to give fair warning of the prohibited conduct; creates an unreasonable and arbitrary presumption; arbitrarily attaches criminal responsibility; or is an unreasonable and arbitrary exercise of police power. See, *e.g.*, *Mullaney v. Wilbur*, 421 U.S. 684 (1975); *Lambert v. California*, 355 U.S. 225 (1957); *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489 (1982); *Bouie v. City of Columbia*, 378 U.S. 347 (1964); *State v. Prince*, 52 N.M. 15, 189 P.2d 993 (1948); *People v. Nangapareet*, 210 N.Y.S.2d 446 (Erie County Ct. 1960); *People v. Estreich*, 75 N.Y.S.2d 267, 272 App. Div. 698 (1947).

The defendant apparently argues that if the state need not prove corrupt motive under sec. 946.13(1)(b) or the defendant does not have the statutory privilege defense, the legislation is fundamentally unfair, because

it arbitrarily attaches criminal responsibility to a blameless person.

The constitutional limitations on the legislature's defining the elements of a crime are not clear. We need not explore these limitations in this case. We do not believe this case presents a due process question. [14]

The defendant's assertion that sec. 946.13(1)(b) is arbitrary and unreasonable because it imposes a criminal penalty on a blameless person is not persuasive in this case where we treated this case as one in which the statutory privilege defense applied. Had the defendant produced sufficient evidence to support the defense, the state would have had the burden of persuasion, under the rules applicable to affirmative defenses, to prove beyond a reasonable doubt that the defendant's conduct was not in good faith, and was not an apparently authorized and reasonable fulfillment of any duties of a public office. If this defense applied to the offense, a defendant

---

[14] The state asserts that we need not address the due process issue because the defendant did not receive a prison sentence. In *State v. Beaudry*, 123 Wis. 2d 40, 59, 365 N.W.2d 593 (1985), the court did not address the constitutional question when the penalty imposed was a fine, not imprisonment, saying "[a]decision by this court on the constitutionality of a jail term ... would not affect the judgment of conviction in this case or the sentence imposed on this defendant." In *Beaudry*, as in this case, the defendant was sentenced to pay a fine; no imprisonment was imposed. *Beaudry* can, however, be distinguished from this case. *Beaudry* involved a misdemeanor. If the imprisonment was an unconstitutional penalty, the defendant in *Beaudry* would still be convicted of a misdemeanor and subject to a fine. In this case, the crime is a felony and if the imprisonment penalty is illegal, the offense may not be a felony under Wisconsin law. See sec. 939.60, Stats. 1983–84. The defendant's conviction of felony in this case would thus be placed in doubt.

would not be convicted under sec. 946.13(1)(b) unless he was blameworthy. Therefore, where, as in this case, we treated the case as one in which the statutory privilege defense applied, no due process issue arises. This court does not ordinarily address constitutional issues which are not brought directly in issue by the facts presented in the case. *Laufenberg v. Cosmetology Examining Board*, 87 Wis. 2d 175, 187, 274 N.W.2d 618 (1979).

For the reasons set forth, we affirm the conviction.

*By the Court.* —The judgment of the circuit court is affirmed.