KAREN A. CASE, Secretary Department of Revenue
You have asked whether under Wisconsin's liquor laws, specifically section 125.33 (1)(a), Stats., a person is prohibited from having an interest in real estate leased to a Class "B" licensee while also being a director, officer or stockholder of a brewery. For the reasons stated below, I have determined that section 125.33 (1)(a) prohibits such a relationship.
Your letter describes the following scenario:
 "D", a brewery, holds a Wisconsin brewery permit and a Wisconsin wholesale beer license. "X" is president of the brewing company, as well as chairman of the board, chief executive officer, a director, and major stockholder. The results of an investigation conducted by the Department of Revenue show that "X" and his wife, "Y", are directly involved in two partnerships that hold an interest in the real estate leased to a Class "B" licensee. "X" and "Y" are partners in ABC Properties, each owning a 25% interest. The remaining 50% interest is held by the Trust of "Z", deceased father of "Y". The real estate manager for ABC Properties is "Y". "X" and "Y"'s home address is also the business address for ABC Properties. During an interview the Department of Revenue conducted with the Class "B" licensee, who leases property from ABC Properties, it was revealed that the licensee entered into a five-year lease with ABC Properties and the licensee negotiated and signed his lease with "X." Moreover, an inspection of the Class "B" licensee's premises was conducted by the Department of Revenue and it was discovered that "D"'s beers were sold exclusively.
Section 125.33 (1)(a), Wisconsin's "tied-house" law, with certain exceptions not here applicable, prohibits brewers or wholesalers from giving things of value to Class "B" licensed retailers. This section states, in relevant part: *Page 77 
 [N]o brewer or wholesaler may furnish, give, lend, lease or sell any furniture, fixtures, fittings, equipment, money or other thing of value to any campus or Class "B" licensee or permittee, or to any person for the use, benefit or relief of any campus or Class "B" licensee or permittee, or guarantee the repayment of any loan or the fulfillment of any financial obligation of any campus or Class "B" licensee or permittee. Such actions may not be taken by the brewer or wholesaler directly or indirectly, or through a subsidiary or affiliate corporation, or by any officer, director, stockholder or partner thereof.
"Tied-house" laws are designed to prevent the integration of retail and wholesale outlets, and to stop manufacturers, wholesalers and distributors from owning or controlling retail outlets. 48 C.J.S. Intoxicating Liquors § 226 (1981). Historically, Wisconsin's liquor control laws have evinced a legislative intent that the fermented malt beverage industry be divided into three levels: the manufacturer, the distributor and the retailer. State v. Kay Distributing Co., Inc.,110 Wis.2d 29, 37, 327 N.W.2d 188 (Ct.App. 1982). The object and intent of Wisconsin's "tied-house" law is:
 [T]o prevent manufacturers and wholesalers from acquiring complete or partial control of specific Class "B" retailers, directly by owning them or indirectly by creating financial or moral obligations. The purpose is clearly to assure the freest competition in the industry by preventing monopolistic practices and, to divorce entirely the wholesaler from the Class "B" retailer.
61 Op. Att'y Gen. 68, 69 (1972) (emphasis supplied).
The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. State v. Hurd, 135 Wis.2d 266,276, 400 N.W.2d 42 (Ct.App. 1986). In determining legislative intent, first resort is to the language of the statute itself. State v. Pham, 137 Wis.2d 31, 34, 403 N.W.2d 35
(1987). When the language of the statute is clear and unambiguous, the statute must be interpreted on the basis of the plain meaning of its terms. State v. Trongeau, 135 Wis.2d 188,191, 40 N.W.2d 12 (Ct.App. 1986). A cardinal rule in interpreting statutes is to favor a construction that fulfills the purpose of the statute over a construction that defeats it.State v. Stoehr, 134 Wis.2d 66, 76, 396 N.W.2d 177 (1986).
The language of the statute is clear and unambiguous. The plain meaning of its terms must be given effect. The ban of the statute in *Page 78 
terms of wholesaler-retailer relationships is extended to the doing of the forbidden acts indirectly as well as directly. No brewer or wholesaler, either "directly or indirectly, or through a subsidiary or affiliate corporation, or by any officer, director, stockholder or partner," may "give, lend, lease or sell any furniture, fixtures, fittings, equipment, money, or other thing of value to any . . . Class `B' licensee." Sec. 125.33
(1)(a), Stats.
My interpretation of the plain meaning of section 125.33 (1)(a) finds support in 44 Op. Att'y Gen. 34 (1955). In that opinion, the issue addressed was whether section 66.054 (4)(a), Wisconsin's former "tied-house" law, prohibited the furnishing, giving or lending of money or other thing of value by either a brewer, bottler or wholesaler to a trade association comprised of holders of Class "B" licensees. In resolution of the issue, my predecessor concluded that "the interposition of a trade association of the character that you describe between the brewer, bottler, or wholesaler, and the individual licensee is no defense to a charge of violation of the statute." 44 Op. Att'y Gen. at 36. Similarly, under this set of facts, a partnership owned by "X" and his immediate relatives interpositioned between the brewery-wholesaler and the Class "B" licensee does not work to remove it from the proscription of section 125.33 (1)(a). To conclude otherwise would ignore the plain language and the long recognized intent of the statute
It might be argued that the language of section 125.33 (1)(a) should be construed to merely prohibit officers, directors, stockholders or partners who have effective control over a brewery or wholesale distributing business from providing or leasing things of value to Class "B" retailers. This proposition finds support in Wis. Admin. Code § TAX 8.87 (4)(e), as well as in 22 Op. Att'y Gen. 814 (1933). Section TAX 8.87 (4)(e) sets forth the following as an example of a prohibited "indirect interest" under chapter 125: "A natural person who has effective control in a partnership, association, or corporation which holds a wholesale permit and who leases premises to a retail licensee." The opinion at 22 Op. Att'y Gen. 814 concluded that Wisconsin's then existing "tied-house" law did not bar a fixture corporation from furnishing or leasing fixtures to a Class "B" licensee, even though stockholders of a brewery also owned stock in the fixture corporation, as long as the fixture corporation was a legitimate business and not a mere subterfuge. Notwithstanding these authorities, however, I have determined that the *Page 79 
applicability of section 125.33 (1)(a) does not hinge upon whether a particular officer, director, stockholder or partner has effective control over a brewery or wholesale licensee or upon whether the furnishing of things of value constitutes legitimate business.
First, the statute does not limit itself in applicability to officers, directors, stockholders and partners who have a specified degree of control over a brewery or wholesaler. The statute is all prohibitive. Section 66.05 (10)(c) as created by chapter 207, Laws of 1933, a precursor to section 125.33 (1)(a), originally limited the application of our "tied-house" laws to conduct engaged in by a "brewer, bottler, wholesaler, or corporation a majority of whose stock is owned by any brewer, bottler or wholesaler." But with the passage of chapter 121, Laws of 1941, the Legislature expressly broadened the scope of the proscription to include prohibited conduct engaged in by "a subordinate or affiliate corporation, or by any officer, director, stockholder or partner thereof." By doing so the Legislature evinced an intent to fill the gap in the law which allowed interested third parties to engage in conduct which was prohibited to brewers and wholesalers.
Second, the opinion at 22 Op. Att'y Gen. 814 is not persuasive insofar as it was offered before the change in the law in 1941 which expanded the coverage of Wisconsin's "tied-house" law. The obsolescence of the opinion at 22 Op. Att'y Gen. 814 was discussed in 61 Op. Att'y Gen. 68. In that opinion, it was recognized that the change in the law occurring in 1941 indicated that "the principal concern of the legislature was to broaden the scope of the tied-house prohibition so as to eliminate the loopholes that had been created by the original language of the tied-house laws." Id. at 73.
Finally, Wisconsin Administrative Code § TAX 8.87 (4)(e) is but one of a number of examples of prohibited interests under chapter 125 set forth in the code. That section of the code expressly states that the list of business interests is not an exhaustive statement of prohibited interests under chapter 125. Prohibited interest relationships can exist without regard to whether effective control or improper influence is present.
It is my opinion, therefore, that section 125.33 (1)(a) prohibits the business relationships described in your letter. Proof regarding a violation of 125.33 (1)(a) does not require an actual showing of influence by a brewer or wholesaler upon the product choices of a *Page 80 
retailer. Tied-house laws are specifically designed to alleviate the need for such a showing. That is why the Legislature broadly chose to bar the described relationships whether they exist directly or indirectly.
DJH:JMG *Page 81