STATE of Wisconsin, Plaintiff-Respondent,

v.

Fred L. HERMANN, Defendant-Appellant.†

Court of Appeals

*No. 90-2252-CR. Submitted on briefs May 14, 1991.—Decided August 14, 1991.*

(Also reported in 474 N.W.2d 906.)

†Petition to review denied.

274

On behalf of the defendant-appellant, the cause was submitted on the brief of *Leonard D. Kachinsky* of *Kachinsky Law Offices* of Neenah.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Paul Lundsten,* assistant attorney general.

Before Nettesheim, P.J., Scott and Anderson, JJ.

SCOTT, J. Fred L. Hermann was convicted of two counts of delivery of a controlled substance and two counts of delivery of a controlled substance, party to a crime, all within 1,000 feet of school premises. He was sentenced to five years' imprisonment on each count, to run concurrently.

On appeal, Hermann argues that, for several reasons, he merits resentencing. He contends the state should have been made to prove that he knew he was within 1000 feet of a school when committing the offenses; that sec. 161.49, Stats., is unconstitutional; and that the trial court erred in sentencing him under the *mandatory* minimum penalty provision of sec. 161.49 instead of retroactively applying sec. 161.438, Stats., which authorizes a *presumptive* minimum penalty. Because we find none of his arguments persuasive, we affirm the judgment.

In February 1990, Hermann was charged with two counts of delivering cocaine and methamphetamines on August 25, 1989 and two counts of delivering more of the same controlled substances on October 16, 1989. The drug transactions leading to the charges took place between adults in a private residence. On June 1, 1990, a jury convicted Hermann on all four counts and made a separate finding that each offense had occurred within 1,000 feet of a school. The trial court sentenced him

pursuant to the penalty enhancer provisions of sec. 161.49, Stats.

## I. CONSTRUCTION OF SEC. 161.49, STATS.

Hermann does not dispute that the state proved intent regarding the underlying delivery offenses. He argues, however, that the trial court erroneously failed to instruct the jury that the state also had to prove that he knew he was within 1,000 feet of a school when the offenses occurred. While acknowledging that sec. 161.49, Stats., does not state whether scienter must be proved, Hermann nonetheless urges that we read it into the statute.

The state, by contrast, argues that the legislature properly can—and did here—create a strict liability statute. A strict liability statute does not require proof of scienter, or criminal intent. *See State v. Stoehr*, 134 Wis. 2d 66, 75, 396 N.W.2d 177, 180 (1986). Legislative silence on whether scienter is an element of the offense is not unknown in criminal statutes. *State v. Collova*, 79 Wis. 2d 473, 480, 255 N.W.2d 581, 584 (1977). Although the element of scienter is the rule rather than the exception, Wisconsin long has recognized "the existence of and . . . the propriety of" strict liability statutes. *Id.* at 480, 255 N.W.2d at 584-85.

Whether proof of scienter is required when the statute does not explicitly refer to scienter turns on legislative intent. *Stoehr*, 134 Wis. 2d at 75, 396 N.W.2d at 180. This presents a matter of statutory construction,[1] *id.*, which is a question of law and is reviewed without

[1]Hermann asserts that "serious constitutional issues" arise if sec. 161.49, Stats., is applied without a requirement of scienter.

deference to the trial court. *State v. McManus,* 152 Wis. 2d 113, 122-23, 447 N.W.2d 654, 657 (1989). In determining legislative intent regarding scienter, we consider the statute's language, legislative history and purpose, the seriousness of the penalty, and the practical requirements of effective law enforcement. *Stoehr,* 134 Wis. 2d at 76, 396 N.W.2d at 180.

Section 161.49, Stats. (1987-88), in effect when the offenses were committed, provided in relevant part:

**161.49. Distribution of or possession with intent to deliver a controlled substance on or near certain places.**

. . ..

(2)(a). Except as provided in par. (b), if any person violates s. 161.41(1) by distributing . . . a controlled substance listed in schedule I or II while in or otherwise within 1,000 feet of a state, county, city, village or town park, a swimming pool open to members of the public, a youth center or a community center, *while on or otherwise within 1,000 feet of any private or public school premises* or while on or otherwise within 1,000 feet of a school bus . . . the court shall sentence the person to at least 3 years in prison, but otherwise the penalties for the crime apply. The court shall not place the person on probation. The person is not eligible for parole until he or she has served at least 3 years, with no modification by the calculation under s. 302.11(1) ["good time" eligibility]. [Emphasis added.]

As Hermann concedes, sec. 161.49, Stats., contains no express scienter requirement. We therefore look to the legislative history to determine whether the legislature intended that scienter be shown on the enhancer

He develops his argument as one of statutory construction, however, and that is how we will address it.

element in addition to proof of intent on the underlying delivery charge.

Neither party has brought to our attention, nor have we found, any legislative history of sec. 161.49, Stats., evincing an intent to require proof of scienter. Both parties agree, however, that sec. 161.49 appears to have had its genesis in a comparable federal statute, 21 U.S.C. sec. 845a,[2] enacted just one year before sec. 161.49.[3]

The legislative history of sec. 845a, "the schoolyard statute," clearly reveals Congress' intent to establish a drug-free zone around schools. *United States v. Falu,* 776 F.2d 46, 50 (2d Cir. 1985). The *Falu* court specifically determined that "a requirement that the dealer know that a sale is geographically within the prohibited area would undercut this unambiguous legislative design." *Id.* The court reasoned that such a construction does not criminalize otherwise innocent activity since the statute applies only to persons already in violation of a statute with a *mens rea* requirement. *Id.* Other federal courts agree with this rationale and result. *See, e.g., United States v. Cross,* 900 F.2d 66, 69 (6th Cir. 1990); *United States v. Lewin,* 900 F.2d 145, 148 (8th Cir. 1990); *United States v. Holland,* 810 F.2d 1215, 1223–24

---

[2]21 U.S.C. sec. 845a has since been transferred to sec. 860 of the code. For purposes of this opinion, however, we will refer to it as sec. 845a because that is how it is denominated in the cases we address.

[3]Although the language of sec. 161.49, Stats., does not exactly mirror that of 21 U.S.C. sec. 845a, the essence of both (an enhanced penalty for distributing controlled substances within 1,000 feet of a school) is virtually identical. We thus view the cases interpreting the federal statute as persuasive authority. *See Gygi v. Guest,* 117 Wis. 2d 464, 467, 344 N.W.2d 214, 216 (Ct. App. 1984).

(D.C. Cir.), *cert. denied,* 481 U.S. 1057 (1987). We, too, agree and conclude that a similar logic motivated our legislature to enact sec. 161.49, Stats.

█

We next consider the purpose of the statute. When the legislature's primary goal is to regulate, to accomplish a social good, or to obtain a high standard of care, proof of a criminal state of mind often is eliminated to achieve the desired result. *Stoehr,* 134 Wis. 2d at 79, 396 N.W.2d at 182. The federal analog to sec. 161.49, Stats., was designed to deter drug distribution in and around schools to help eliminate outside negative influences in those areas. *Falu,* 776 F.2d at 50.

Although proximity to a school must be proved, the state argues that it does not necessarily follow that scienter regarding that element be shown. In *Collova,* for example, a driving after revocation case, the supreme court did read into the statute a scienter requirement. The court emphasized that its determination to read scienter into the statute was based on the routine and innocent nature of the underlying conduct—driving—and noted that a person may be driving truly unaware of a license revocation. "To inflict substantial punishment on a person *who is innocent of any intentional or negligent wrongdoing* offends the sense of justice and is ineffective." *Collova,* 79 Wis. 2d at 486, 255 N.W.2d at 588 (emphasis added). The court also stated:

> Strict criminal liability has been imposed on persons who failed to have a license or to comply with regulations when trafficking in drugs or in firearms. But such acts are in and of themselves not innocent acts. Persons who choose to engage in these kinds of unusual and dangerous activities may reasonably be held to the highest standards of care and precision,

279

> enforced by strict criminal liability, in conforming to government regulations.

*Id.* at 484, 255 N.W.2d at 587 (citations omitted). Consistent with the rationale of *Collova,* the fact that the purpose of sec. 161.49, Stats., is to prohibit an "unusual and dangerous" activity suggests that scienter need not be proved other than in the underlying delivery charge.

We also must consider the severity of the penalty in determining whether the legislature intended proof of scienter. Hermann relies on *Collova* to argue that severe consequences attaching to a violation militate for a scienter requirement. *See Collova,* 79 Wis. 2d at 486, 255 N.W.2d at 587–88. We are not persuaded. First, even the potential for lengthy incarceration is not dispositive of whether the legislature intended that scienter be an element. *See Stoehr,* 134 Wis. 2d at 81, 396 N.W.2d at 182–83. Second, the *Collova* court looked to the "wholly routine and innocent" nature of the underlying conduct. *Collova,* 79 Wis. 2d at 486, 255 N.W.2d at 587. A similar ordinariness and blamelessness cannot be ascribed to Hermann's underlying criminal conduct.

Finally, we consider the practical requirements of effective law enforcement. Establishing that a defendant knew he or she was in a protected zone by proving familiarity with an area could amount to an onerous task for law enforcement officials. In view of the purpose of the legislation, we conclude that the legislature did not intend to increase the burden of enforcing it.

Thus, having considered the language, legislative history and purpose of sec. 161.49, Stats.; the seriousness of the penalty; and the practicalities of enforcement, we conclude that the legislature did not intend to require proof of scienter in order to invoke the more severe penalty. Hermann engaged in the "dangerous activity"

of delivering drugs. He can be held strictly liable for carrying on that activity in a statutorily protected area. Section 161.49 serves to enforce a high standard of care for the protection of the public, and of schoolchildren in particular. Regardless of whether children actually are present or directly involved in the transactions,

> [t]he consequences of such transactions inevitably flow from inside the dwellings onto the streets and contribute directly to the violent and dangerous criminal milieu Congress sought to eliminate in the proximity of schools.

*Holland,* 810 F.2d at 1219. Regulations such as sec. 161.49 aid in dissipating the "violent and dangerous criminal milieu" near schools. Scienter need not be proved.

## II. CONSTITUTIONALITY OF SEC. 161.49, STATS.

Next, we address Hermann's various constitutional challenges to sec. 161.49, Stats. The constitutionality of a statute is a question of law which this court reviews without deference to the trial court. *McManus,* 152 Wis. 2d at 129, 447 N.W.2d at 660. Legislative enactments are presumed constitutional and the court will sustain a statute against attack if there is any reasonable basis for the exercise of legislative power. *Id.* Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. *Id.* The court cannot reweigh the facts found by the legislature. *Id.* If the court can conceive of any facts on which the legislation could reasonably be based, it must hold the legislation constitutional. *Id.*

## A. Cruel and Unusual Punishment

Hermann's first constitutional argument is that the mandatory minimum sentence authorized by sec. 161.49, Stats., violates his right to be free from cruel and unusual punishment. He asserts that the statute "violate[s] the judgment of reasonable people [as to] what is right and proper under the circumstances" and does not allow the sentencing judge to consider the defendant's prior record, character or rehabilitative potential. His argument is unconvincing.

The test for determining if a sentence is cruel and unusual is whether the sentence is so excessive and unusual, and so disproportionate to the offense committed, as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances. *Steeno v. State,* 85 Wis. 2d 663, 669, 271 N.W.2d 396, 399 (1978). Furthermore, "[p]unishment established by a democratically elected legislature is presumed valid, and a 'heavy burden rests on those who would attack the judgment of the representatives of the people.' " *Holland,* 810 F.2d at 1221 (quoting *Gregg v. Georgia,* 428 U.S. 153, 175 (1976)).

We conclude that it is not cruel and unusual punishment to require a three-year mandatory minimum sentence for one found guilty of knowingly engaging in an illegal drug sale, which sale takes place in a statutorily protected zone. Such a sentence pales in comparison to the $20,000 fine and two consecutive twenty-year sentences for possession of nine ounces of marijuana found constitutional in *Hutto v. Davis,* 454 U.S. 370 (1982), or the sentence of life without possibility of parole for possession of 672 grams (less than 1.5 pounds)

of cocaine held not to be cruel and unusual punishment in *Harmelin v. Michigan,* — U.S. —, 111 S. Ct. 2680 (1991). Hermann's enhanced sentence is not shocking to the public sentiment. We see no eighth amendment violation.

## B. Equal Protection

Hermann next argues that sec. 161.49, Stats., violates his right to equal protection by creating an arbitrary and irrational classification. He asserts it subjects to enhanced penalties an individual who, "by accident of geography," sells drugs within 1,000 feet of school premises regardless of whether the drug transaction involved schoolchildren, while one selling drugs to minors more than 1,000 feet from school premises does not face the enhanced penalty. This argument also fails.

Equal protection does not deny a state the power to treat persons within its jurisdiction differently. *McManus,* 152 Wis. 2d at 131, 447 N.W.2d at 660. Rather, the state retains broad discretion to create classifications—even ones which result in some inequity—so long as the classifications have a reasonable basis. *Id.* Where—as here—a suspect classification is not alleged, the legislative enactment must be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate government interest. *Id.* at 131, 447 N.W.2d at 660-61. If the classification is reasonable and practical in relation to the objective, that is sufficient and doubts must be resolved in favor of the reasonableness of the classification. *Id.* at 131, 447 N.W.2d at 661.

We conclude that sec. 161.49, Stats., does not violate Hermann's constitutional right to equal protection.

283

The legislative classification in the statute is rationally related to the deterrence of illegal drug transactions near schools and other places children frequent. As we have stated, even if illegal drug transactions do not directly involve children, such illegality does contribute directly to a violent and dangerous atmosphere. Seeking to eliminate such an atmosphere near our schools by more harshly penalizing those who contribute to it is not patently arbitrary or irrational.

## C. Due Process

Hermann's third constitutional argument is that sec. 161.49, Stats., violates his right to due process by establishing an irrational, irrebuttable presumption that all illegal drug transactions within 1,000 feet of school premises have a special detrimental effect on schoolchildren. He maintains that the assumption is "clearly erroneous" because children are not harmed when the transaction involves only adults. Again we disagree.

Due process requires that the means chosen by the legislature bear a reasonable and rational relationship to the purpose or objective of the enactment. *McManus,* 152 Wis. 2d at 130, 447 N.W.2d at 660. Similarly, a statutory presumption cannot be sustained if there is no rational connection between the fact proved and the ultimate fact presumed. *Tot v. United States,* 319 U.S. 463, 467 (1943).

As stated previously, illegal drug activity contributes to the violent and dangerous atmosphere from which sec. 161.49, Stats., attempts to protect children. Here, the means chosen—enhanced penalties for those convicted of drug transactions near school

grounds—bear a reasonable and rational relationship to the deterrence of such activities. Whether or not children are directly involved is irrelevant. Thus, the fact proved (the proximity to school premises) is rationally related to the ultimate fact presumed (particular harm to children). We see no due process violation.

### D. Police Power

Hermann's final constitutional attack on sec. 161.49, Stats., is that it represents an invalid exercise of the state's police power. While he does not dispute that the regulation of controlled substances is within an area of proper exercise of the police power, he does contend that sec. 161.49 "works a grave injustice" against those who are subject to its enhanced penalties "merely by accident of geography." Again we disagree.

Once within the area of proper exercise of police power, it is for the legislature to determine what regulations, restraints or prohibitions are reasonably required to protect the public safety. *Bisenius v. Karns,* 42 Wis. 2d 42, 54, 165 N.W.2d 377, 383, *appeal dismissed,* 395 U.S. 709 (1969). Only the abrogation of a "basic and substantial individual liberty" justifies judicial intervention to set aside a legislative enactment. *Id.* We already have concluded that sec. 161.49, Stats., is reasonably related to keeping areas children frequent free of the evils associated with drug trafficking. Moreover, the statute does not abrogate a "basic and substantial individual liberty"—there is no right to sell illegal drugs near schools or anywhere else. Therefore, sec. 161.49 is a valid exercise of the police power.

## III. APPLICABILITY OF SEC. 161.49, STATS.

The final issue is whether the trial court erred in sentencing Hermann according to the mandatory minimum provision of sec. 161.49, Stats., without considering sec. 161.438, Stats.[4] Section 161.438 provides that all sentences under ch. 161, Stats., are presumptive minimum sentences.

Section 161.438, Stats., became effective on January 31, 1990. *See* secs. 53m and 3203, 1989 Wis. Act 121. The offenses here occurred on August 25 and October 16, 1989, and the amended complaint was filed on February 26, 1990. Hermann was convicted on June 1, 1990 and sentenced on July 2, 1990. Thus, the statute took effect after the offenses were committed but before the filing of the complaint, entry of judgment and sentencing.

Section 990.04, Stats.,[5] governs the effect of repealed statutes on pending actions. Whether it applies

---

[4]Section 161.438, Stats., provides:

**Minimum sentence.** Any minimum sentence under this chapter is a presumptive minimum sentence. Except as provided in s. 973.09(1)(d), the court may impose a sentence that is less than the presumptive minimum sentence or may place the person on probation only if it finds that the best interests of the community will be served and the public will not be harmed and if it places its reasons on the record.

[5]Section 990.04, Stats., provides:

**Actions pending not defeated by repeal of statute.** The repeal of a statute hereafter shall not remit, defeat or impair any civil or criminal liability for offenses committed, penalties or forfeitures incurred or rights of action accrued under such statute before the repeal thereof, whether or not in course of prosecution or action at the time of such repeal; but all such offenses, penalties, forfeitures and rights of action created by or founded on such statute, liability wherefor shall have been incurred before the time of such repeal thereof, shall be preserved and remain in force notwithstanding such repeal, unless specially and expressly remitted, abrogated or done away with by the repealing statute. And criminal prosecutions and

here is a question of law. *See Truesdale v. State,* 60 Wis. 2d 481, 484, 210 N.W.2d 726, 728 (1973). We conclude it does.

In essence, sec. 990.04, Stats., provides that criminal prosecutions shall proceed to judgment in the same manner as if the repealed statute continued in full force. Although sec. 990.04 refers to repealed statutes, it applies with equal force to an amendatory statute because such a statute is "in its legal effect a repeal of those restrictive words." *Truesdale,* 60 Wis. 2d at 487, 210 N.W.2d at 729. Furthermore, an amendatory statute will not be construed as retroactive unless a contrary intention is expressly stated or necessarily implied. *Id.* at 489, 210 N.W.2d at 730.

Section 990.04, Stats., notwithstanding, Hermann contends sec. 161.438, Stats., should have governed his sentencing because it is procedural rather than substantive in nature. We disagree. Hermann's argument is rooted in common law principles. As the state points out, where there exists a statute on point and case law construing that statute, there is no need to resort to common law. We hold that sec. 990.04 controls the ques-

actions at law or in equity founded upon such repealed statute, whether instituted before or after the repeal thereof, shall not be defeated or impaired by such repeal but shall, notwithstanding such repeal, proceed to judgment in the same manner and to the like purpose and effect as if the repealed statute continued in full force to the time of final judgment thereon, unless the offenses, penalties, forfeitures or rights of action on which such prosecutions or actions shall be founded shall be specially and expressly remitted, abrogated or done away with by such repealing statute.

287

tion of which penalty provisions apply when there is an interim legislative change in the penalty scheme.

*By the Court.*—Judgment affirmed.